UNITED STATES of America, Plaintiff,

v.

Samuel J. RUSSOTTI, et al., Rene Piccarreto, Richard J. Marino, Thomas E. Marotta, Joseph R. Rossi, a/k/a "The Hop", Anthony M. Colombo, Donald J. Paone, Joseph J. Trieste, Joseph J. LaDolce, a/k/a Joseph J. LoDolce, John M. Trivigno, a/k/a "Flap", Defendants.

No. CR–82–156T.

United States District Court,
W.D. New York.

Jan. 26, 1983.

---

Salvatore R. Martoche, U.S. Atty., W.D. N.Y. by Kenneth R. Fisher and Robert L. King, Sp. Asst. U.S. Attys., Dept. of Justice Strike Force, Rochester, N.Y., for plaintiff.

John Humann, Buffalo, N.Y., for Russotti.

Harold Boreanaz, Buffalo, N.Y., for Piccarreto.

Paul J. Cambria, Jr., Buffalo, N.Y., for Marino.

Richard A. Miller, Rochester, N.Y., for Marotta.

Herbert Greenman, Buffalo, N.Y., for Rossi.

Robert Murphy, Buffalo, N.Y., for Colombo.

John F. Speranza, Rochester, N.Y., for Paone.

Charles Noce, Rochester, N.Y., for Trieste.

Robert Freedman, Buffalo, N.Y., for La-Dolce.

John R. Parrinello, Rochester, N.Y., for Trivigno.

## DECISION and ORDER

TELESCA, District Judge.

Presented for determination are a series of motions, joined in by all defendants, seeking to dismiss the indictment or, in the alternative, to limit the proof that the government may present at trial. The essence of all motions is rooted in the concepts of double jeopardy and collateral estoppel.

## PRIOR STATE COURT PROCEEDINGS

The defendants Russotti, Piccarreto, Marotta and Marino were convicted in 1976, in Monroe County Court of conspiracy in the first degree and murder in the second degree in connection with the killing of Vincent J. Massaro. Subsequently, in 1978, that judgment of conviction was vacated and the indictment was dismissed based on the fact that their convictions were obtained through the use of perjured testimony. All defendants now contend that the present inclusion of the Massaro homicide as an underlying crime making up part of the racketeering pattern is barred by virtue of the prior state court proceedings.

At the outset, I note that defendants Rossi, Colombo, Paone, Trieste, LaDolce and Trivigno were never charged in any forum with this crime, hence their motions to dismiss on double jeopardy grounds are denied.

■ The general question of whether successive federal and state prosecutions are constitutionally permissible has been raised many times. As the Supreme Court of the United States has stated, "[w]hile' *United States v. Lanza,* 260 U.S. 377 [43 S.Ct. 141, 67 L.Ed. 314], was the first case in which we squarely held valid a federal prosecution arising out of the same facts which had been the basis of a state conviction, the validity of such a prosecution by the Federal Government has not been questioned by this Court since the opinion of *Fox v. Ohio,* 5 How. 410 [46 U.S. 410, 12 L.Ed. 213], more than one hundred years ago." *Bartkus v. Illinois,* 359 U.S. 121, 129, 79 S.Ct. 676, 681, 3 L.Ed.2d 684 (1959). In *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the Supreme Court directly addressed the question of "whether a federal prosecution of defendants already prosecuted for the same acts by a State, subjects those defendants 'for the same offense to be twice put in jeopardy of life or limb' in violation of the Fifth Amendment." *Id.* at 190, 79 S.Ct. at 668. The Court held that a prosecution by the federal government following on the heels of a state prosecution, was permissible based on the concept of dual sovereignty.

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same territory .... Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and *may be punished by each.*

*Id.* at 194, 79 S.Ct. at 670, quoting *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922) (emphasis added). Thus, it is clear that the government may include the Massaro homicide as an underlying crime in its R.I.C.O.* indictment based on the principle of dual sovereignty.

The defense contends, however, that the dual sovereignty theory does not apply here. They argue that the previous state Massaro prosecution was merely a cover for the federal authorities; that the federal authorities were so substantially involved in the state prosecution that they should not be allowed to relitigate the same issues here. Defendants also argue forcefully that since the two principal witnesses in the State court Massaro murder trial were under the Federal Witness Protection Program, that fact elevates the Massaro trial to the equivalent of a Federal prosecution.

I hold otherwise. While the cases note that "[t]he dual sovereignty doctrine is subject to the qualification * * * that a state prosecution cannot be used merely as a cover and a tool of federal authorities," *United States v. Aleman,* 609 F.2d 298, 309 (7th Cir.1979), *cert. denied* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), I have found no case where a court has prevented the federal government from proceeding with a prosecution notwithstanding their involvement in the preceding state court action. *See e.g., Bartkus v. Illinois,* 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1959); *United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976). In *United States v. Liddy,* the D.C. Court of Appeals set forth the circumstances under which a federal prosecution, following a state prosecution, may be violative of the Double Jeopardy Clause of the Fifth Amendment. "*Bartkus,* as we view it, stands for the proposition that federal authorities are proscribed from manipulating state processes to accomplish that which they cannot constitutionally do themselves." *Id.* at 79. In the instant case, the perjured testimony that was given in state court was an attempt to corroborate an informant's testi-

mony, a step that would have been unnecessary in federal court. Moreover, it is clear that the Monroe County prosecution was not "begun at the *direction,*" (*see United States v. Liddy* at pages 79–80), of the federal government but was rather initiated by the local authorities.

The defense makes a great deal out of the "co-mingling of manpower and prosecutorial efforts by the state and federal authorities in these prosecutions." But that factor was present—to some extent—in both *Bartkus* and in *Aleman,* and in both cases the respective courts praised the "co-operation between state and federal authorities [as] a welcome innovation." *United States v. Aleman,* at 309; *Bartkus v. Illinois,* 359 U.S. at 123, 79 S.Ct. at 678. I am in full agreement with those courts. The cooperation between state and federal police agencies and prosecutorial organizations is both laudatory and desired.

Historically, the merger of resources and investigative efforts by state and federal governments, was not always the case. The records of these proceedings show that in the original Massaro prosecution the state and federal governments were acting independently of one another. Ultimately the federal authorities withdrew from the case and the state continued alone. Clearly, based on the history of this case, the dual sovereignty theory should be applied and accordingly defendants' motion to dismiss the indictment based on the prior state Massaro convictions is denied.

### THE 1976 R.I.C.O. INDICTMENT

On April 7, 1976, government prosecutors filed a two-count indictment charging defendant Piccarreto, defendant Marino and others with a R.I.C.O. substantive crime as well as a R.I.C.O. conspiracy. (18 U.S.C. § 1962(c), (d)). The 1976 indictment alleged that during the period from June 1, 1969, to August 31, 1973, Mr. Piccarreto and Mr. Marino were members of a criminal enterprise which conspired to commit and did commit multiple acts of arson and which devised a scheme to defraud certain

---

* R.I.C.O.—Racketeer Influenced and Corrupt Organizations, 18 U.S.C. § 1961 et seq.

insurance companies by means of false representations as to the facts and circumstances surrounding the fires. (For lack of a better descriptive name, the government refers to the 1976 R.I.C.O. indictment as the "arson for hire" indictment.) The "arson for hire" case was tried before a jury before the Honorable Harold P. Burke (now deceased) from September 13, 1977, to October 31, 1977, here in Rochester. On October 31, 1977, the jury rendered a verdict of not guilty as to both Mr. Piccarreto and Mr. Marino.

In the instant action, defendants Piccarreto and Marino argue that their acquittal in October, 1977, on the "arson for hire" charges bars prosecution of the present indictment. The defendants contend that their prosecution under the present indictment would violate the Double Jeopardy clause of the Fifth Amendment by "imposing more than one punishment for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

The critical double jeopardy inquiry in the instant case is therefore whether these two R.I.C.O. indictments would, in effect, seek to punish the defendants twice for the "same offense." The answer to this inquiry necessarily depends on what Congress envisioned as the "allowable unit of prosecution" when it enacted R.I.C.O. As the Supreme Court explained in *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1977):

> It is congress and not the prosecution which establishes and defines offenses. Few, if any, limitations are imposed on the Double Jeopardy Clause on the legislative power to define offenses. But once Congress has defined a statutory offense

by its prescription of the "allowable unit of prosecution," that *prescription determines the scope of protection afforded by a prior conviction or acquittal.* Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice.

*Id.* at 69–70, 98 S.Ct. at 2181–82 (citations omitted) (emphasis supplied). In the instant case the prosecution and defendants are in total disagreement as to their views of what constitutes an "allowable unit of prosecution." The government argues that Congress intended each "distinct pattern of racketeering activity" to be the allowable unit of prosecution. The defendants contend that the "allowable unit of prosecution" under R.I.C.O. is not the *acts* of racketeering but the *enterprise* itself. Under the government view, double jeopardy would not attach to a single criminal enterprise so long as successive R.I.C.O. indictments allege different patterns of racketeering activity. Under the defendants' view, once the government has obtained a R.I.C.O. conviction or acquittal as to a particular criminal enterprise, prosecutors may not indict the same enterprise again *for racketeering acts that occurred during the time period encompassed by the first R.I. C.O. indictment,* even if the second indictment alleges totally different racketeering activities.[1]

■ In determining the "allowable unit of prosecution" under the R.I.C.O. statute, I am guided by the Supreme Court's recent language in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)[2],

---

1. The position taken by the defendants during oral argument was significantly narrower than the position espoused in their motion papers. In the latter, the defendants' seemed to argue that once the government obtained a R.I.C.O. conviction or acquittal as to a particular criminal enterprise, prosecutors may *never* re-indict the same enterprise again under R.I.C.O. Under this view, in order for Mr. Marino or Mr. Piccarreto to be subject to another R.I.C.O. indictment, the government would have to "establish that a new and completely different enterprise than that prosecuted in the 1976

indictment existed", and that Mr. Marino and Mr. Piccarreto participated in the requisite number of racketeering acts committed by that "new" enterprise. (*See* Affidavit of Paul J. Cambria, Jr. ¶ 82. *See also* Memorandum of Law on Behalf of Mr. Piccarreto at ¶ 6; Memorandum of Law on Behalf of Mr. Russotti at ¶ 17.)

2. The language of the R.I.C.O. statute itself is of little assistance in determining the "allowable unit of prosecution." As the Eighth Circuit noted in *United States v. Dean,* 647 F.2d 779

*In order to secure a conviction under R.I.C.O. the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity'.* The enterprise is an entity, for present purposes, a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is on the other hand, a series of criminal acts as defined by the statute. 18 USC § 1961(1). *The former is proved by evidence of an on-going organization, formal or informal, and by evidence that the various associates function as a continuing unit.* The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. *The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.* The existence of an enterprise at all times remains a separate element which must be proved by the Government" (452 U.S. at 583, 101 S.Ct. at 2528–29) (emphasis supplied).

It is apparent therefore that R.I.C.O. does not seek to criminalize membership alone in an enterprise [3]; nor does it criminalize racketeering activity standing alone.[4] Rather, it is the *combination* of these two separate and distinct elements which Congress intended to punish by enacting R.I.C.O.

■ Accordingly, in order for the instant indictment to offend the Double Jeopardy Clause *both* the criminal enterprise and the pattern of racketeering alleged in the 1976 R.I.C.O. indictment must be "the same" as the criminal enterprise and the pattern of racketeering in the present indictment. If *both* are the same, the present indictment must be dismissed. If *either* is different, the indictment does not offend the Double Jeopardy Clause of the Fifth Amendment.

It is important to determine whether the 1976 R.I.C.O. indictment and the present indictment charge two distinct patterns of racketeering activity. In *United States v. Dean*, 647 F.2d 779 (8th Cir.1981) the Court of Appeals for the Eighth Circuit adopted a five factor test in determining whether two R.I.C.O. counts presented "distinguishable instances of conduct or participation in the affairs of [an] enterprise." *Id.* at 786. The five factors utilized were:

1. The time of the various activities charged as part of separate patterns

2. The identity of the persons involved in the activities

3. The statutory offenses charged as racketeering activities in each charge

4. The nature and scope of the activity the Government seeks to punish under each charge

5. The places where the corrupt activity took place under each charge

■ Accordingly this test is adopted and will be applied in the instant case.

1. *The time of the various activities charged as part of separate patterns:* The life of the enterprise in the 1976 R.I.C.O. case, ran from June 1, 1969, up to and including August 31, 1973. The life of the enterprise alleged in the present indictment runs from February 1, 1971, up to and including November 8, 1982. Thus, there does exist an overlap of approximately two

(8th Cir.1981), *modified en banc on other grounds*, 667 F.2d 729 (8th Cir.1982), *cert. denied*, —— U.S. ——, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982): "The statutory words [of R.I.C.O.] would support at least four [different] interpretations of the allowable unit of prosecution." *Id.* at 786.

**3.** *See United States v. Mandel*, 415 F.Supp. 997 (D.Md.1976), where the Court states: "Indeed, the legislative history of [R.I.C.O.] ... shows that Congress has taken pains to make a con-

viction dependent upon behavior and not 'status'. When faced with various proposals to incorporate a definition of organized crime, Congress flatly rejected the attempt, aware of the impossibility of definition." *Id.* at 1018. *See also United States v. Forsythe*, 560 F.2d 1127, 1136 (3rd Cir.1977).

**4.** *See United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354.

and one-half (2½) years in the "lifespan" of the two enterprises. However, there is no overlap as to the predicate offenses alleged in the indictments. The last predicate offense in the 1976 indictment was alleged to have occurred on March 17, 1973. The first predicate offense in the present indictment is alleged to have occurred in October of 1973.

2. *The identity of the persons involved in the activities.* The 1976 indictment charged eight defendants, two of which were Richard Marino and Rene Piccarreto. The present indictment charges ten defendants, the only overlap being Mr. Piccarreto and Mr. Marino.

3. *The statutory offense charged as Racketeering Activities.* There appears to be minimal overlap in terms of the offenses charged as predicate racketeering crimes in the two indictments. The 1976 indictment charged arson and mail fraud. The present indictment charges murder, attempted murder, extortion and obstruction of justice. The only overlap under this factor is that both indictments allege arson as a predicate offense. However, the arson charged in the present indictment occurred five (5) years after the acts alleged in the 1976 indictment concluded. In addition, the arson alleged in the present indictment is not part of the "arson for hire" scheme that was the focus of the 1976 indictment and trial.

4. *The nature and scope of the activity the government seeks to punish under each indictment.* The nature and scope of the activities the government seeks to prove under the present indictment is clearly different from the nature and scope of the activities alleged in the 1976 indictment. The 1976 R.I.C.O. indictment concerned alleged criminal acts committed for a single purpose: defrauding insurance companies by deliberately setting fires to insured buildings. The present indictment seeks to punish criminal activity wholly different from the "arson for hire" scheme alleged in the 1976 indictment. The nature and scope of the activity charged in the instant indictment concerns obtaining monies through the extortion of Rochester gambling clubs;

protecting the affairs of the alleged criminal enterprise from "rival and competing individuals" through the use of threats, murder and arson; and avoiding law enforcement investigations of the criminal enterprise by committing illegal acts, including "threats involving murder and the obstruction of justice." (Indictment NO. 82–156, filed November 9, 1982.) This Court fails to see any overlap in the nature and scope of the racketeering activity charged in the two indictments.

5. *The place where the corrupt activity took place under each indictment.* Both the 1976 and the present indictment allege events in and around the Rochester, New York area. However, as the government points out, "the location of the predicate acts of racketeering are wholly different, obviously because the crimes charged are different." (Government's Answer to Defendant's Motion to Dismiss, page 17).

■ After careful application of the *Dean,* five factor test to the questioned indictments, I find that the 1976 R.I.C.O. indictment and the present indictment reveal "distinct patterns of racketeering activity." *Dean, supra,* at 787. Accordingly, even assuming *arguendo* that the enterprises alleged in the two indictments are, in fact, the same (a determination I neither need to make nor do now make), prosecution of the defendants Marino and Piccarreto under the present indictment does not violate the Double Jeopardy Clause of the Fifth Amendment.

## COLLATERAL ESTOPPEL AND THE 1976 R.I.C.O. ACQUITTAL

As an alternative argument, defendants Marino and Piccarreto assert that "even if the present prosecution is not totally barred by the Double Jeopardy Clause, at the very least, the government is prohibited from attempted to re-litigate issues resolved against them, and in favor of the defendants ... during the 1977 trial." (Affidavit of Paul J. Cambria, Jr. ¶ 84).

Both the government and the defendants agree that the correct principle of law to be

utilized in determining the collateral estoppel issue is found in the Supreme Court's decision in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe,* the Court held that the doctrine of collateral estoppel, as applied to criminal proceedings, precluded the government from relitigating an issue of ultimate fact that was *necessarily* determined in favor of a defendant by a valid and final judgment in a prior proceeding involving the same parties. *Ashe, supra,* at 444, 90 S.Ct., at 1194. *See also United States v. Tramunti,* 500 F.2d 1334, 1346 (2nd Cir.1974) *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The Court's task is to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe, supra,* at 444, 90 S.Ct., at 1194. In this regard, the burden is on "the defendant to establish that the issue he seeks to foreclose from litigation in the present prosecution was *necessarily decided in* his favor by the prior verdict." *United States v. Cala,* 521 F.2d 605, 608 (2nd Cir.1975). *See also United States v. Boffa,* 513 F.Supp. 444 (D.Del. 1980) *aff'd. in part and rev'd. in part on other grounds,* 688 F.2d 919 (3rd Cir.1982).

■ The issue of fact which defendants Marino and Piccarreto believe was necessarily determined in their favor as a result of their 1977 acquittal of R.I.C.O. charges is that they were not members of the criminal enterprise charged in the 1976 indictment. Even assuming, for the sake of argument, that the criminal enterprise alleged in the 1976 R.I.C.O. indictment is the *same* criminal enterprise alleged in the present indictment, defendants' collateral estoppel arguments must, nonetheless be rejected. Certainly, there exist other plausible explanations for the jury's acquittal of Marino and Piccarreto in 1977 other than a determination that neither was a member of the criminal enterprise.

In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court made clear that there exist two distinct elements necessary for a R.I.C.O. conviction: (1) the existence of an enterprise and (2) the requisite number of racketeering acts committed by participants in the enterprise. *Id.* at 583, 101 S.Ct. at 2528. Mr. Marino's and Mr. Piccarreto's acquittal in 1977 could rationally have been based upon the jury's determination that, while they were both *members* of the enterprise, they did not participate in the particular affairs of the enterprise charged in the 1976 indictment (which was the arson for hire and insurance company fraud scheme).

Therefore, the defendants have failed to carry their burden for demonstrating that their prior 1976 R.I.C.O. acquittal "necessarily" resolved any issue in the present indictment against the government. Accordingly, their motion to dismiss portions of the indictment on collateral estoppel grounds is denied.

## PROSECUTORIAL VINDICTIVENESS OR MISCONDUCT

■ Defendants have also moved to dismiss the present indictment on the grounds of prosecutorial vindictiveness or misconduct. The defendants have the burden of demonstrating vindictiveness sufficient to require dismissal of the indictment. *See United States v. Goodwin,* —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *United States v. Gallegos-Curiel,* 681 F.2d 1164 (9th Cir.1982). After careful consideration of the pleadings, affidavits, exhibits and other legal memorandum submitted by the parties, I find that the defendants' conclusory allegation of prosecutorial misconduct does not satisfy that burden. Accordingly, their motion to dismiss the indictment of prosecutorial vindictiveness grounds is denied.

In sum, the defendants' motion for a dismissal of the indictment or portions thereof on Double Jeopardy, Collateral Estoppel or prosecutorial vindictiveness grounds is, in all respects, denied.

ALL OF THE ABOVE IS SO ORDERED.