**UNITED STATES of America, Appellee,**

v.

**Samuel J. RUSSOTTI, Rene Piccarreto, Richard J. Marino, and Thomas E. Marotta, Defendants-Appellants.**

Nos. 1367 to 1370, Dockets 83–1054, 83–1055, 83–1056 and 83–1069.

United States Court of Appeals, Second Circuit.

Argued July 11, 1983.

Decided Aug. 29, 1983.

Certiorari Denied Feb. 21, 1984. See 104 S.Ct. 1273.

---

John F. Humann, Buffalo, N.Y. (Richard Miller, Rochester, N.Y., on brief), for defendants-appellants Russotti and Marotta.

Harold J. Boreanaz, Buffalo, N.Y., for defendant-appellant Piccarreto.

Paul J. Cambria, Jr., Buffalo, N.Y. (Mary Good and Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., on brief), for defendant-appellant Marino.

Kenneth R. Fisher, Sp. Asst. U.S. Atty., Rochester, N.Y. (Salvatore R. Martoche, U.S. Atty., and Robert L. King, Sp. Asst. U.S. Atty., Rochester, N.Y., on brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and MALETZ, Senior Judge.*

MALETZ, Senior Judge:

Defendants-appellants Samuel J. Russotti, Rene Piccarreto, Richard J. Marino and Thomas E. Marotta appeal from an order of the United States District Court for the

*Of the United States Court of International Trade, sitting by designation.

1. The relevant portions of RICO provide:
§ 1961. *Definitions*
As used in this chapter—
(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous

Western District of New York, Michael A. Telesca, J., denying their motions to dismiss an indictment filed November 8, 1982. That indictment charges appellants and six others with violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1970), commonly known as RICO. *See United States v. Russotti,* 555 F.Supp. 1236 (W.D.N.Y.1983). The grounds for their appeal are essentially threefold. First, appellants Marino and Piccarreto argue that in view of a 1976 RICO prosecution of them the present RICO indictment should be dismissed as violative of the double jeopardy clause. Second, in 1978 a New York State court judgment convicting all four appellants of the 1973 murder of a Vincent J. Massaro was vacated. The inclusion of that homicide as an underlying RICO predicate offense should be barred, appellants contend, because of an alleged joint federal-state effort to procure that conviction. Third, appellants submit alternatively, that since the government knew of the 1973 Massaro homicide prior to the 1976 RICO indictment, the failure to include that offense as a predicate act in that indictment barred the inclusion of the Massaro homicide as a predicate act in the 1982 RICO indictment.

For the reasons appearing below, we find appellants' contentions without merit and, accordingly, affirm the order of the district court.

## I

### Background

In 1976 the government filed a two-count indictment charging defendants Piccarreto, Marino and six others with a RICO substantive violation, as well as RICO conspiracy, 18 U.S.C. § 1962(c) and (d) (1970).[1] The

drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under ... the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), ... section 1503 (relating to obstruction of justice), ... section 1951 (relating to ... extortion) ...;
(2) "State" means any State of the United States, the District of Columbia, the Com-

1976 indictment alleged that from June 1, 1969 to August 31, 1973, Piccarreto and Marino were members of a criminal enterprise which conspired to commit and did commit multiple acts of arson. They were further charged with having devised a scheme to defraud insurance companies by means of false representations as to the facts and circumstances surrounding the fires. The life of the enterprise allegedly ran from June 1, 1969 to August 31, 1973. The first predicate offense was alleged to have occurred on January 26, 1970, and the last on March 17, 1973. On October 7, 1977, a jury returned a verdict of not guilty as to both Piccarreto and Marino.

Also during 1976 all four appellants were convicted in a New York state court of conspiracy in the first degree and murder in the second degree in connection with the homicide of Vincent J. Massaro. However, in 1978 the judgment of conviction was vacated and the indictment dismissed when it was discovered that their convictions had been obtained through the use of perjured testimony of sheriff's deputies. The United States brought civil rights prosecutions against the responsible sheriff's deputies and state prosecutors and secured convictions. It is undisputed that the federal authorities were aware of appellants' alleged involvement in the Massaro homicide at the time the 1976 RICO indictment was filed.

On November 8, 1982 the present RICO indictment was filed against all four appellants and six others charging them with a substantive violation of RICO, 18 U.S.C. § 1962(c), and a conspiracy to violate RICO, 18 U.S.C. § 1962(d). The indictment charges that defendants conspired to and conducted the affairs of an enterprise through a pattern of racketeering activity which included murder, attempted murder, arson, extortion and obstruction of justice. The pattern of racketeering activity is alleged to have occurred from October of 1973 (acts preparatory to the Massaro homicide) to December 17, 1981 (the date of an alleged extortionate act). The life of the enterprise is purported to have run from February 1, 1971 up to the date of the indictment.

With this background we consider at the outset appellants' contention that the dual sovereignty rule is inapplicable to the extent that the 1982 indictment charges appellants with a pattern of racketeering activity which includes as a predicate offense the murder of Vincent Massaro.

## II

### Dual Sovereignty

Appellants argue that the federal government was so deeply involved in the state murder prosecution as to preclude application of the dual sovereignty rule, at least insofar as the 1982 indictment alleges the Massaro murder as a predicate act of racketeering and an overt act of conspiracy to violate RICO. At a minimum, appellants submit, they are entitled to an evidentiary hearing on this point.

---

monwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any pe-

riod of imprisonment) after the commission of a prior act of racketeering activity;

. . . .

§ 1962. *Prohibited activities*

. . . .

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection[ ] . . . (c) of this section.

The concept of dual sovereignty is firmly established, and appellants do not take specific issue with it. In addressing the question whether double jeopardy bars a federal prosecution of a defendant already prosecuted for the same act by a state, the Supreme Court answered in the negative in *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922):

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory.... Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.

*Id.* at 382, 43 S.Ct. at 142. *Accord United States v. Wheeler,* 435 U.S. 313, 320, 98 S.Ct. 1079, 1084, 55 L.Ed.2d 303 (1978); *Abbate v. United States,* 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 129, 79 S.Ct. 676, 681, 3 L.Ed.2d 684 (1959).

However, the doctrine is not unqualified. "The dual sovereignty doctrine is subject to the qualification ... that a state prosecution cannot be used merely as a cover and a tool of federal authorities." *United States v. Aleman,* 609 F.2d 298, 309 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). On this score, appellants argue, the dual sovereignty rule fails here. They contend that the state murder prosecution was merely a cover for the federal authorities who were so substantially involved in the state prosecution that they should not be allowed to relitigate the same issues.

The record shows, though, that in the Massaro prosecution the state and federal authorities were acting independently of one another. The federal authorities ultimately withdrew from the case and the state continued alone. It is true that before this there was a cooperative effort between the state and federal authorities which, appellants insist, completely eroded dual sovereignty. To this contention the district court replied:

> [T]hat factor was present—to some extent—in both *Bartkus* and in *Aleman,* and in both cases the respective courts praised the "cooperation between state and federal authorities [as] a welcome innovation." *United States v. Aleman,* at 309; *Bartkus v. Illinois,* 359 U.S. at 123, 79 S.Ct. at 678.... The cooperation between state and federal police agencies and prosecutorial organizations is both laudatory and desired.

555 F.Supp. at 1239. We agree with the district court and conclude that the dual sovereignty rule is fully applicable here.

Appellants present an associated due process argument that they were improperly denied a hearing on the dual sovereignty question. We find this equally unavailing. First, appellants offered little in the way of proof of federal orchestration of the state murder trial other than the barest conclusory allegations. While two witnesses in the state murder trial were admitted to the federal witness protection program, that fact alone does not transform the Massaro trial into a federal prosecution for jeopardy purposes, there being not the slightest indication that the federal authorities manipulated the state process to accomplish that which they could not constitutionally do themselves. *See United States v. Ng,* 699 F.2d 63, 68 (2d Cir.1983); *United States v. Liddy,* 542 F.2d 76, 79–80 (D.C.Cir.1976). What is more, the uncontradicted affidavit of Special Assistant United States Attorney Robert L. King describing in detail the limited federal involvement in the Massaro murder trial obviated whatever necessity there may have been for conducting a hearing. In sum, the decision of the district court to deny appellants' motion without a hearing was well within its discretion. *See United States v. Cohen,* 489 F.2d 945, 951–52 (2d Cir.1973).

█ Finally, given our conclusion that there is no reason for ignoring the dual sovereignty rule here, appellants' subsidiary

claim of prosecutorial vindictiveness must perforce be rejected. *United States v. Ng,* 699 F.2d at 68 ("A setting that involves the conduct of two independent sovereigns does not lend itself to the concept of vindictive prosecution").[2]

We next address the question of the preclusive effect, if any, of the 1976 RICO prosecution on the 1982 RICO indictment in issue here.

### III

#### *Former Jeopardy*

■ Appellants Marino and Piccarreto launch somewhat divergent attacks against the 1982 indictment based on the 1976 RICO prosecution, but at bottom all contentions are grounded on claims of double jeopardy or collateral estoppel.[3] Our review is, of course, narrowly circumscribed, given the pretrial status of this appeal. *See Abney v. United States,* 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–41, 52 L.Ed.2d 651 (1977). The critical double jeopardy inquiry is whether the 1982 indictment would, in effect, seek to punish Marino and Picarreto for any of the same offenses for which they were tried and acquitted in the 1976 RICO prosecution. *See United States v. Solano,* 605 F.2d 1141, 1144 (9th Cir.1979), *cert. denied sub nom. England v. United States,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980). The answer to this inquiry necessarily depends on what Congress prescribed as the "allowable unit of prosecution." *Sanabria v. United States,* 437 U.S. 54, 69–70, 98 S.Ct. 2170, 2181–82, 57 L.Ed.2d 43 (1977). "[T]hat prescription determines the scope of protection afforded by a prior conviction or acquittal." *Id.* at 70, 98 S.Ct. at 2181.

■ Not surprisingly, appellants and the government take diametrically opposing positions on this issue. Appellants argue that the enterprise is the focal point of RICO, so that acquittal forecloses reprosecution for participation in the same enterprise, even though through a different pattern of racketeering activity. In reaching this conclusion appellants analogize RICO to the crime of conspiracy, with the RICO enterprise being similar to the agreement to engage in criminal conduct, and the pattern of racketeering activity being akin to overt acts. From this, appellants argue, successive conspiracy prosecutions based solely on a different set of overt acts is barred and so too should successive RICO prosecutions where the enterprise is the same.

The government, for its part, counters that it is meaningless to focus exclusively on the enterprise without reference to what it does, citing *United States v. Bagaric,* 706 F.2d 42, 56 (2d Cir.1983) ("it is logical to characterize any associative group in terms of what it *does,* rather than by abstract analysis of its structure" [emphasis in original] ); and *United States v. Forsythe,* 560 F.2d 1127, 1136 (3d Cir.1977) ("legislative intent was to make RICO violations dependent upon behavior, not status"). Accordingly, the government labels the 1976 enterprise as the "arson-for-hire" enterprise, and the 1982 enterprise as the "extortion" enterprise, thereby purportedly distinguishing the two for double jeopardy purposes. Through this conduct-oriented characterization, the government argues, the allowable unit of prosecution is properly established.

In answering the question what is the "allowable unit of prosecution" under RICO, the Supreme Court's opinion in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), is of particular guidance:

2. Although it is not entirely clear that this latter claim is properly before the court on an interlocutory appeal, *see United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); *Abney v. United States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977), we nevertheless conclude that to the extent that that claim relates to the double jeopardy question it is reviewable by us at this time. *See United*

*States v. Wright,* 622 F.2d 792, 793 (5th Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980).

3. Inasmuch as appellants Russotti and Marotta were not named in the 1976 indictment, they do not claim former jeopardy based on the 1976 RICO prosecution. We consider appellants' collateral estoppel argument in Part IV, *infra.*

In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute.... The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Id.* at 583, 101 S.Ct. at (footnote omitted). Thus, it is neither the enterprise standing alone nor the pattern of racketeering activity by itself which RICO criminalizes. Rather, the *combination* of these two elements is the object of punishment under RICO. *See United States v. Mazzei,* 700 F.2d 85, 88–90 (2d Cir.1983); *United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied sub nom. Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Weisman,* 624 F.2d 1118, 1122 (2d Cir.1980) (pattern of racketeering activity must be done "in the conduct of the affairs of an 'enterprise'"), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980). Therefore, in order for the present indictment to give rise to a valid claim of double jeopardy, *both* the enterprise and the pattern of activity alleged in the 1976 indictment must be the same as those alleged in the 1982 indictment. If either is different, there is no infirmity under the double jeopardy clause.

*See generally* Note, *RICO and the Liberal Construction Clause,* 66 Cornell L.Rev. 167 (1980).

■ Instructive in this connection is *United States v. Dean,* 647 F.2d 779 (8th Cir.1981), *modified on other grounds,* 667 F.2d 729 (1981), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982), where the Eighth Circuit adopted a five factor test for determining whether two RICO counts charge two distinct patterns of racketeering activity. Those factors are

(1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

*Id.* at 788. Applying these five factors to the present case, first, there is an overlap of approximately two and one-half years in the duration of the two enterprises, from February 1, 1971, the beginning of the "extortion" enterprise, and August 31, 1973, the end of the "arson-for-hire" enterprise. However, there is no time overlap as to the predicate offenses alleged in the indictments, the last predicate offense alleged in the 1976 indictment having occurred on March 17, 1973, and the first predicate offense alleged in the 1982 indictment—the Massaro homicide—having occurred in October of 1973.

Second, as to the identity of persons involved in the alleged activities, of the eighteen persons indicted in 1976 and 1982 only two individuals are named in both indictments, Piccarreto and Marino.

Third, the racketeering activities charged in each indictment have only one point of conjunction, that being the allegation of arson. However, the act of arson charged in the 1982 indictment post-dates the last act of arson in the 1976 indictment by some five years. Moreover, the arson charged in the 1982 indictment is allegedly in further-

ance of an extortion scheme, not the arson-for-hire scheme which was the focus of the 1976 indictment. In our view, there is no overlap of racketeering activities under the third *Dean* factor.

As to the fourth and most significant factor—the nature and scope of the activity the government seeks to punish under each indictment—as previously indicated the 1976 indictment concerned a scheme to defraud insurance companies by deliberately setting fires to insured buildings. The present indictment, by contrast, is directed at a scheme to extort monies from Rochester, New York gambling clubs, to protect the affairs of the enterprise from "rival and competing individuals" through the use of threats, murder and arson, and to avoid detection by committing other illegal acts, including murder and obstruction of justice. There is plainly no convergence of the two indictments in this regard.

Fifth, and finally, the place where the illegal activity took place in both indictments did center around the Rochester, New York area.

Having considered and applied the five *Dean* factors, the unavoidable conclusion is that the two indictments allege distinct patterns of racketeering activity. Even assuming an identity of the enterprises, in view of our conclusion that there are two distinct patterns of racketeering present here, the prosecution of Piccarreto and Marino does not offend the double jeopardy clause. Taken to its logical extreme, appellants' argument that the allowable unit of prosecution under RICO is the enterprise would effectively immunize members of that enterprise from any future prosecution following an initial RICO prosecution, regardless of the nature of the subsequent misconduct.

Withal, we are not insensitive to appellants' concern that the government may be free to pursue successive prosecutions under RICO by merely alleging two predicate acts—sufficient to establish a pattern of racketeering activity under 18 U.S.C. § 1961(5)—and, by holding in reserve other predicate acts, bring future RICO prosecutions against participants in the same enterprise.[4] Indeed, appellants contend, an example of just that is presented here with the government's inclusion of the Massaro homicide as a predicate act in the 1982 indictment when the government in fact knew or should have known of that homicide at the time it filed its 1976 indictment. Thus, appellants submit, the Massaro homicide should have been included in the 1976 RICO indictment or not at all. However, the 1982 indictment includes the Massaro murder as one of several unlawful acts designed to maintain control over the enterprise's membership in furtherance of its *extortion scheme*—a scheme which had no relationship to the 1976 arson-for-hire activity.

In short, we are satisfied that the RICO indictment in the present case passes muster under the five *Dean* factors.

■ Appellants' further argument that RICO is analogous to the crime of conspiracy must fail, for here there exist two distinct criminal endeavors, one whose purpose was to obtain monies through arson for hire and insurance fraud, the other to obtain monies through extortion. Thus, the same group which during the same period of time organizes into different enterprises in order to consummate distinct patterns of racketeering activity may be prosecuted for each without trenching upon the constitutional guarantee against double jeopardy. *See United States v. Bagaric,* 706 F.2d at 55 ("the nature of the misconduct often provides the best clue toward defining the enterprise"); *United States v. Weisman,* 624

---

4. In *United States v. Huber,* 603 F.2d 387 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 758 (1980), this court noted that "the potentially broad reach of RICO poses a danger of abuse where a prosecutor attempts to apply the statute to situations for which it was not primarily intended." *Id.* at 395–96.

This court went on to caution strongly against "undue prosecutorial zeal in invoking RICO," *id.* at 396. *See also United States v. Weisman,* 624 F.2d at 1123. *See generally* Comment, *The Need for Greater Double Jeopardy and Due Process Safeguards in RICO Criminal and Civil Actions,* 70 Calif.L.Rev. 724 (1982).

F.2d at 1123. *See also United States v. McDonald,* 692 F.2d 376 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Mallah,* 503 F.2d 971 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). *Cf. Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

## IV

### *Collateral Estoppel*

We consider finally the contention that in light of the 1976 RICO acquittal the government is collaterally estopped from relitigating those issues which were resolved in favor of Marino and Piccarreto.

The starting point for determining this collateral estoppel issue is *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe* the Supreme Court held that the doctrine of collateral estoppel, as applied to criminal proceedings, precludes the government from relitigating an issue of ultimate fact involving the same parties that was *necessarily* determined in favor of a defendant. *Id.* at 444, 90 S.Ct. at 1194. The burden is on defendants to show that the verdict in the 1976 RICO prosecution decided the very issue now in litigation. *United States v. Mespoulede,* 597 F.2d 329, 333 (2d Cir.1979); *United States v. Cala,* 521 F.2d 605, 608 (2d Cir.1975); *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.1974), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). Our task is to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194.

Here, Marino and Piccarreto contend that their 1977 acquittal on RICO charges necessarily means that the jury concluded that they were not members of the enterprise. However, as the government submits and as a fair reading of the 1982 indictment indicates, that indictment charges defendants with membership in an enterprise wholly different from that described in the 1976 indictment. Further,

without engaging in a hypertechnical construction of the jury's verdict, *United States v. Mespoulede,* 597 F.2d at 333, there exists a "plausible explanation[ ] for the jury's failure to convict," *United States v. King,* 563 F.2d 559, 561 (2d Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978), even assuming that the enterprise in each indictment is the same. The acquittal of Marino and Piccarreto could have been the result of a jury determination that while they were members of the enterprise, they did not participate in the arson-for-hire or insurance fraud schemes. As for their acquittal on the RICO conspiracy count, even assuming that the jury concluded that they were not members of the enterprise, this does not preclude a subsequent conspiracy conviction, provided the two conspiracies are distinct criminal schemes. *United States v. Sturman,* 679 F.2d 840, 844 & n. 9 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *United States v. Papa,* 533 F.2d 815, 822 (2d Cir.1976), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). Here, there is "nothing to suggest that the success of one [conspiracy to commit one particular scheme] was in any way dependent upon or related to the other" conspiracy. *Papa,* 533 F.2d at 822.

In brief, at this stage of the proceedings, we fail to see any indication of an attempt by the government "to persuade a second jury of the same fact already litigated" in defendants' favor. *Mespoulede,* 597 F.2d at 335. On this record, the government is thus not barred from charging Marino and Piccarreto with either a new RICO conspiracy or a new substantive RICO offense.

## V

For the foregoing reasons, the order of the district court denying appellants' motions to dismiss the indictment is affirmed.