**UNITED STATES of America,**

v.

**John TOMERO, et al., Defendants.**

**No. S16 06 Crim. 0008(LAK).**

United States District Court,
S.D. New York.

Feb. 14, 2007.

Miriam Rocah, Jonathan Kolodner, Eric Snyder, Assistant United States Attorneys, Michael J. Garcia, United States Attorney, New York City, for Plaintiff.

Lawrence Hochheiser, Hochheiser & Hochheiser, LLP, New York City, for Defendant Moscatiello.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Louis Moscatiello is one of fifteen defendants charged in the sixteenth superceding indictment in this case, which alleges various crimes in connection with the Genovese organized crime family. Moscatiello, allegedly a soldier and Acting Capo of the family, is charged with conspiracy to commit extortion and attempted extortion. He moves to dismiss the indictment on double jeopardy grounds.

### Background

### I. The Previous Indictments

The indictment stems from a three-year investigation of the Genovese family that began in January 2003 and focused initially on the crew of the late John Ardito, a high ranking member.[1] While the government conducted this investigation, however, it concluded other fruitful investigations into the Genovese family. Grand juries in the Southern District of New York returned two indictments against Moscatiello and other alleged Genovese associates.

### A. The Local 14/15 Indictment

The first was returned in February 2003 in *United States v. Muscarella*[2] (the "Local 14/15 Indictment"). Its thrust was that Moscatiello and others, from 1997 through February 2003, exercised extortionate control over Locals 14 and 15 of the International Union of Operating Engineers and forced union officials to assign high-paying and no-show jobs to Genovese family associates. Based on this and related conduct, Moscatiello was charged with racketeering, racketeering conspiracy, several counts of extortion and extortion conspiracy under the Hobbs Act,[3] mail fraud, and unlawful receipt of payments by union representatives.[4]

### B. The Drywall Indictment

The second indictment was returned in April 2004 in *United States v. Moscatiello*[5] (the "Drywall Indictment"). The gist of that indictment was that Moscatiello and others, from 1978 though January 2004, exercised unlawful influence over construction unions in the drywall industry—the District Council and New York City Locals of the United Brotherhood of Carpenters and Joiners (the "UBCJ") and Local 530 of the Operative Plasterers and Cement Masons Union. Using this influence, they permitted drywall companies to violate terms of collective bargaining agreements in exchange for payment. Moscatiello was charged with racketeering, racketeering conspiracy, extortion and extortion conspiracy under the Hobbs Act, mail fraud,

---

1. Ardito died on December 31, 2006.

2. 03 Cr. 0229(NRB).

3. 18 U.S.C. § 1951.

4. *See* Government Mem. Ex. A (Local 14/15 Indictment).

5. 04 Cr. 0343(KMW).

unlawful receipt of payments by union representatives, conspiracy to defraud a union and its benefit fund, employee benefit plan embezzlement, and making false statements in ERISA documents.[6]

### C. The Guilty Plea to the Previous Indictments

#### 1. The Plea Agreement

On the eve of trial in the *Muscarella* case, Moscatiello entered into an agreement by which he agreed to plead guilty to (1) racketeering and racketeering conspiracy in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO")[7] based on the predicate offenses of extortion and extortion conspiracy under the Hobbs Act, (2) extortion and extortion conspiracy in violation of the Hobbs Act, and (3) two counts of conspiracy to commit employee benefit plan embezzlement and mail fraud in violation of 18 U.S.C. § 371.

The agreement provided also that Moscatiello would admit the following conduct: From about 1997 to February 2003, he conspired to extort Locals 14 and 15 in order to ensure that Genovese associates would be assigned preferential and no-show union jobs and actually extorted Local 14 so that one of his co-defendants would be promoted at a certain construction site. From 1997 to January 2004, he conspired to allow contractors who had signed collective bargaining agreements with the UBCJ and Local 530 to violate the terms of those agreements by paying workers off-the-books, employing nonunion workers, not paying workers union-scale wages, and submitting false ERISA documents.

The government agreed to dismiss all open charges and not to prosecute Moscatiello further for the conduct described in the Local 14/15 Indictment, the Drywall Indictment, or the superseding information.[8]

#### 2. The Plea Allocution

During the plea allocution on October 13, 2004, Judge Buchwald asked Moscatiello whether he understood that, in exchange for his guilty plea, he would not be prosecuted further for conduct alleged in either the Local 14/15 Indictment or the Drywall Indictment. Moscatiello stated that he understood. His attorney then asked the government to clarify the scope of Moscatiello's immunity because he was "concerned about an aspect of an investigation that's ongoing at this time."[9] The government responded:

"The agreement provides Mr. Moscatiello with immunity for charges that are contained in two separate indictments. Essentially, your Honor, those indictments charge Mr. Moscatiello with controlling three different labor unions on behalf of the Genovese organized crime family and La Cosa Nostra, specifically Locals 14 and 15 of the International Union of Operating Engineers, Local 530 of the Operative Plasterers and Cement Masons Union, and the District Council and its locals of the United Brotherhood of Carpenters in New York City, over the time period, essentially, from 1978 to January of 2004."

\* \* \*

"Just to put a few additional details on the record regarding the charges. One

---

6. Government Mem. Ex B (Drywall Indictment).

7. 18 U.S.C. § 1962.

8. *See* Government Mem. Ex. C (Plea Agreement, dated Oct. 12, 2004).

9. Def. Mem. Ex. C (Hearing, Oct. 13, 2004) at 15.

of the charges specifically relates to a very broad conspiracy from 1978 until 2004 to defraud Local 530. So to the extent that there is any conduct that relates to that conspiracy, obviously the agreement ... would provide Mr. Moscatiello with immunity for that." [10]

Moscatiello pleaded guilty and Judge Buchwald subsequently sentenced him to 78 months' imprisonment.[11]

## II. This Case

On January 4, 2006, a grand jury returned the initial indictment in this case, which charged only two defendants. Now before the Court is a 30–count superceding indictment naming fifteen defendants.[12] Moscatiello is charged in Counts Four and Five [13] with conspiracy to commit extortion and attempted extortion.[14] The indictment alleges that, from November 2003 to January 2004, Moscatiello and alleged Genovese associates Gerald Fiorino, Pasquale Sperduto, and John Ardito, in violation of the Hobbs Act, sought to force a construction company engaged in interstate commerce, labeled in the indictment as "Victim–1," to pay a $150,000 debt to a roofing contractor close to Sperduto.[15]

Moscatiello moves to dismiss the indictment. He argues that the indictment is barred by the Double Jeopardy Clause because "he has already pleaded guilty to the overall criminal activity spanning November 2003 through January 2004." [16]

## Discussion

### I. Double Jeopardy Generally

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." [17] It protects criminal defendants in three situations: (1) where there is a second prosecution for the same offense after acquittal of that offense, (2) where there is a second prosecution for the same offense after conviction of the offense, and (3) where there are multiple punishments for the same offense.[18] In all three situations, the double jeopardy analysis turns on whether the charged offenses are the same in fact and in law.[19]

When a defendant is charged with violations of two distinct statutory provisions and the charges stem from the same act or transaction, a court applies the test announced in *Blockburger v. United States*.[20] It inquires "whether each provision requires proof of an additional fact which the other does not." [21] It does not look into the conduct underlying the charges, but

---

**10.** *Id.* at 15–16.

**11.** 03 Cr. 0229(NRB), docket item 223 (Judgment in a Criminal Case, dated Dec. 12, 2004).

**12.** Fifteen superceding indictments were returned between January 4, 2006 and January 12, 2007, the date the present indictment was filed. Seventeen defendants charged in various of those superceding indictments have pleaded guilty.

**13.** At the time this motion was filed, the relevant allegations appeared in Counts Five and Six of the indictment then before the Court.

**14.** Docket item 506 (sixteenth superseding indictment) ¶¶ 31, 32.

**15.** *See id.;* Government Mem. 21–22.

**16.** Def. Mem. 1.

**17.** U.S. Const. amend V.

**18.** *E.g., United States v. Estrada*, 320 F.3d 173, 180 (2d Cir.2003) (citing *Schiro v. Farley*, 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)).

**19.** *See id.* (citing *United States v. Nersesian*, 824 F.2d 1294, 1319 (2d Cir.1987)).

**20.** 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**21.** *Id.*

rather only to the elements required to support a conviction under each statutory provision.[22]

The analysis differs, however, when a defendant is charged more than once under the same statute based on purportedly different conduct. The question then becomes whether the two charges "are the same 'in fact,' *i.e.,* whether [the defendant] is being prosecuted twice for the same conduct."[23] This generally is an easy question, as it asks in many instances whether the same "act" underlies both prosecutions.[24] The question is more nuanced, however, when the offenses charged are RICO violations, as the focus then is not on a single act, but on a pattern of activity consisting of related predicate acts.[25]

In *United States v. Russotti,*[26] the Second Circuit held that successive RICO charges alleging the same racketeering enterprise violate the Double Jeopardy Clause only if they allege the same patterns of racketeering activity as well. In comparing patterns of racketeering activity, a court considers five factors: (1) the time of the various activities charged as parts of separate patterns, (2) the identity of the persons involved in the activities under each charge, (3) the statutory offenses charged as racketeering activities in each charge, (4) the nature and scope of the activity the government seeks to punish under each charge, and (5) the places where the corrupt activity took place under each charge.[27]

## II. This Motion

Moscatiello argues that by pleading guilty to racketeering and racketeering conspiracy from November 2003 to January 2004, cases in which the Genovese family was the alleged enterprise, he immunized himself from all prosecution for Genovese family operations that took place during the same time period. In other words, "the *criminal activity* to be examined as to the question of *sameness*—for Double Jeopardy purposes—is Moscatiello's participation in (or conspiracy to participate in) the organization/entity called The Genovese Organized Crime Family."[28]

This is erroneous. The Second Circuit dealt with the same argument in *Russotti* and rejected the contention "that the enterprise is the focal point of RICO, so that acquittal [or conviction] forecloses reprosecution for participation in the same enterprise, even though through a different pattern of racketeering activity."[29] It concluded instead that the "allowable unit of prosecution" in a RICO case is the combination of the racketeering enterprise and the pattern of racketeering activity.[30]

---

**22.** *See, e.g., United States v. Chacko,* 169 F.3d 140, 146–48 (2d Cir.1999) (same conduct may support charges for bank fraud under 18 U.S.C. § 1344 and making false statements to a federally insured institution under 18 U.S.C. § 1014).

**23.** *United States v. Asher,* 96 F.3d 270, 273 (7th Cir.1996), *cert. denied,* 519 U.S. 1100, 117 S.Ct. 786, 136 L.Ed.2d 729 (1997); *see generally United States v. Calderone,* 982 F.2d 42 (2d Cir.1992).

**24.** *Asher,* 96 F.3d at 273.

**25.** *E.g., United States v. Minicone,* 960 F.2d 1099, 1106 (2d Cir.1992) (RICO violations require relationship of each act to the racketeering enterprise and to each other).

**26.** 717 F.2d 27, 33 (2d Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984).

**27.** *Id.* at 33 (citing *United States v. Dean,* 647 F.2d 779 (8th Cir.1981), *modified on other grounds,* 667 F.2d 729 (1982), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982)); *see United States v. Langella,* 804 F.2d 185, 189 (2d Cir.1986).

**28.** Def. Mem. 1 (emphasis in original).

**29.** 717 F.2d at 32.

**30.** *Id.* at 32–33 (citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Mazzei,*

■ Moscatiello therefore is incorrect to argue that his guilty plea "settled" his Genovese family "account."[31] Participation in a racketeering enterprise is not a crime unto itself, but rather one element of a RICO offense. It follows that a conviction under RICO does not necessarily preclude a subsequent prosecution for an offense committed in connection with the same racketeering enterprise. A double jeopardy violation occurs only if the subsequent charge is based on conduct that was part of the same pattern of racketeering activity that supported the prior RICO conviction.[32] The Court therefore interprets Moscatiello's motion as arguing that the alleged extortion of Victim–1 was part of the same pattern of racketeering activity with which he was charged in the Local 14/15 and Drywall Indictments, and for which he received immunity in 2004 in exchange for his guilty plea. It therefore turns to the *Russotti* factors.[33]

## III. The Russotti *Factors*

### A. *Local 14/15 Indictment*

■ Counts Four and Five of the indictment in this case and the racketeering charge in the Local 14/15 indictment allege Hobbs Act extortion conspiracies in the New York area. The similarities end there, however. The racketeering activity charged in the Local 14/15 indictment took place from 1997 until February 2003, whereas the extortion conspiracy in this case took place from November 2003 to January 2004. None of Moscatiello's alleged co-conspirators in this case was charged in the Local 14/15 Indictment.[34] Most importantly, the nature and scope of the activity the government sought to punish under each charge are different. In the Local 14/15 Indictment, the government sought to punish Moscatiello's·use of threats against Local 14 and 15 officials in order to secure high paying and no-show jobs for Genovese associates. Here, on the other hand, the government seeks to punish Moscatiello for conspiring to coerce Victim–1 into paying a debt to a roofing contractor close to Sperduto. There plainly is "no convergence of the two indictments" when one considers *Russotti's* "fourth and most significant factor."[35]

### B. *The Drywall Indictment*

The conspiracy to extort Victim–1 took place entirely within the time frame of the pattern of racketeering activity alleged in the Drywall Indictment, took place in the same geographical area, and was a violation of the same statutory provision, the Hobbs Act, as some of the predicate offenses alleged in the Drywall Indictment RICO count.

■ Nevertheless, the persons involved were different, as none of Moscatiello's co-defendants in this case were charged in the Drywall Indictment. Once again,

700 F.2d 85, 88–90 (2d Cir.1983)); *see Langella,* 804 F.2d at 188–89.

31. *See* Def. Mem. 7; Hochheiser Aff. ¶ 11.

32. *See Russotti,* 717 F.2d at 33.

33. The *Russotti* case considered whether two successive RICO charges violated the Double Jeopardy Clause. While Moscatiello has not been charged with a RICO violation in this case, the *Russotti* factors nevertheless are relevant, as they help determine whether two patterns of conduct are the same for double jeopardy purposes, and the essence of the motion to dismiss is that Moscatiello has pleaded guilty to a certain pattern of conduct, part of which now forms the basis of a new prosecution.

34. Pasquale DeLuca and Brian Falco, defendants in this case, were charged in the Local 14/15 Indictment. However, they are not named here as participants in the conspiracy to extort Victim–1.

35. 717 F.2d at 34; *see Langella,* 804 F.2d at 189.

the nature and scope of the activity the government sought to punish under the Drywall Indictment were different. Moscatiello's control over Local 530 and his involvement in a scheme to receive payments from companies in the drywall industry in exchange for his permitting them to violate collective bargaining agreements had nothing to do with his alleged involvement in a conspiracy to threaten a construction contractor to pay a debt.

Having analyzed the *Russotti* factors, the Court concludes that the conspiracy to extort Victim–1 was not part of the same racketeering activity with which Moscatiello previously was charged.[36]

## IV. Other Considerations

Finally, Moscatiello accuses the government of misrepresenting to him the scope of the immunity he was granted in exchange for pleading guilty in 2004. He claims that the government assured him at the plea colloquy before Judge Buchwald that he would not be charged with any Genovese-related offenses that took place between 1978 and 2004. He accuses the government of "ambushing" him by convincing him to plead guilty while it silently harbored "secret" evidence to use against him in a later trial.[37]

■ Such hyperbole is unavailing. The government explained clearly to Moscatiello on the record that he was being offered immunity from prosecution for his extortionate control over Locals 14, 15, and 530 from 1978 to 2004. While it stated that the charges against Moscatiello were "very broad," [38] it never suggested that the scope of immunity was so broad as to encompass all of Moscatiello's Genovese-related activities for the same time period. Nor did the

**36.** Moscatiello urges the Court to apply the factors enumerated in *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985). The Second Circuit there considered whether two conspiracies were the same for double jeopardy purposes and applied an eight factor balancing test similar to the *Russotti* test. *See id.* at 662 (considering (1) the similarity of the criminal offenses charged in the indictments, (2) the overlap of participants, (3) the overlap of time, (4) the similarity of operation, (5) the existence of common overt acts, (6) the geographic scope of the alleged conspiracies or location where overt acts occurred, (7) common objectives, and (8) the degree of interdependence between alleged distinct conspiracies). The Court is not convinced, however, that the *Korfant* analysis is appropriate here. Moscatiello does not contend that the conspiracy alleged in this case is the same as any of the numerous conspiracies with which he previously was charged. His argument is that the present charges fall within the pattern of racketeering activity charged in the Local 14/15 and Drywall Indictments.

In any event, application of the *Korfant* analysis would lead to the conclusion that this prosecution would not subject Moscatiello to double jeopardy. The conspiracies alleged in the previous indictments, as Moscatiello concedes, involved different participants and had no common overt acts. *See* Def. Mem. 4, 6. Moreover, they sought different ends, as they did not involve Victim–1's payment of money to Sperduto's associate, but extortionate control over labor unions. They were not interdependent, since the success of Moscatiello's control over labor unions had nothing to do with whether Victim–1 would pay its debt and vice versa. The only similarities are that all of the conspiracies took place in the same geographic location, the New York area, some overlapped in time, and some involved Hobbs Act violations. The differences, however, strongly outweigh the similarities. In the last analysis, the conspiracy charges in the previous indictments, including the wide-sweeping RICO conspiracy counts, were based on entirely different facts than the conspiracy charge in this case. Thus, to the extent Moscatiello claims that he is being put in jeopardy twice for the same conspiracy, he is wrong.

**37.** *See* Def. Mem. 7.

**38.** Def. Mem. Ex C (Hearing, Oct. 13, 2004) at 16–17.

terms of Moscatiello's plea agreement contemplate such an expansive interpretation.

*Conclusion*

The indictment does not contravene the Double Jeopardy Clause, nor does it violate Moscatiello's 2004 plea agreement. Accordingly, the motion to dismiss the indictment is denied.

SO ORDERED.