07-4314-cr
United States v. Pizzonia

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

―――――――――

August Term, 2008

(Argued: September 25, 2008                    Decided: August 19, 2009)

Docket No. 07-4314-cr

―――――――――

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

DOMINICK PIZZONIA,

*Defendant-Appellant*.

―――――――――

Before:

CALABRESI, STRAUB, and RAGGI, *Circuit Judges*.

―――――――――

Defendant, convicted of racketeering conspiracy in the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*), now appeals on the ground that, in a case where the indictment alleged that the pattern of racketeering "consisted of" specified predicates, the government's failure to prove any such predicate within the statute of limitations precluded a guilty verdict.

1

AFFIRMED.

---

JOEY LIPTON, Assistant United States Attorney (Peter A. Norling, Paige Petersen, Assistant United States Attorneys, *of counsel*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellee*.

DIARMUID WHITE (Brendan White, *of counsel*), White & White, New York, New York, *for Defendant-Appellant*.

---

REENA RAGGI, *Circuit Judge*:

Defendant Dominick Pizzonia appeals from a judgment of conviction for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), which was entered on October 2, 2007, by Judge Jack B. Weinstein after a jury trial in the United States District Court for the Eastern District of New York. See 18 U.S.C. § 1962(c)-(d). Presently incarcerated serving a 15-year prison term, Pizzonia invokes the statute of limitations to challenge his conviction. He contends that the indictment limited the scope of the charged conspiracy to seven predicate acts. Because the jury found only two of these acts proved, both of which fell outside the relevant limitations period, Pizzonia submits that the district court erred in denying his post-verdict motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29.

The argument is unconvincing for several reasons: (1) the indictment alleged that it

2

was the pattern of racketeering – not the conspiracy itself – that consisted of the charged predicate acts; (2) a racketeering conspiracy is a concept distinct from (a) the pattern of racketeering through which the conspirators agree to participate in the affairs of the charged enterprise, and (b) the predicate acts that may evidence the pattern; (3) while predicate acts within the limitations period can demonstrate the racketeering conspiracy's existence during that time, this temporal requirement can also be satisfied by other evidence; (4) a jury properly views predicate acts in light of the totality of the circumstances to determine whether they manifest the threat of continued criminal activity essential to prove a pattern of racketeering, and such circumstances, no less than the predicate acts themselves, can prove a conspiracy's existence beyond the conclusion of the last predicate act; and (5) in any event, a racketeering conspiracy, like any other conspiracy, is presumed to continue until it achieves its criminal object, and the object of a racketeering conspiracy is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts.

As Judge Weinstein correctly observed, even though the predicate acts proved in this case were outside the statute of limitations, other trial evidence permitted the jury to conclude that both the charged racketeering conspiracy and Pizzonia's membership in it continued into the limitations period. See Sentencing Tr. at 12 (Sept. 5, 2007). Accordingly, we affirm the judgment of conviction.

3

## I.    Background

### A.    The Relevant Limitations Period

 On May 26, 2005, a federal grand jury in the Eastern District of New York returned an indictment against Pizzonia for the racketeering conspiracy at issue in this case.  Thus, all parties agree that pursuant to the five-year statute of limitations established by 18 U.S.C. § 3282, the government was required to prove Pizzonia's participation in the conspiracy sometime after May 26, 2000.

### B.    The Fourth Superseding Indictment

Pizzonia ultimately stood trial on a fourth superseding indictment returned on December 7, 2006  ("the Indictment").  Thus, we focus on the language of that pleading on this appeal.

The Indictment charged that from approximately 1987 through September 1995, Pizzonia, co-defendant Alfred DiCongilio, and others employed by or associated with a specific enterprise, to wit, the "Gambino organized crime family of La Cosa Nostra," Indictment ¶ 1,"conspired to . . . conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity," id. ¶ 15. The Indictment stated that the "principal purpose" of the Gambino crime family was "to generate money for its members and associates" through a wide range of criminal activities, "including extortion, illegal gambling, interstate transportation of stolen goods, loansharking,

narcotics trafficking and robbery." Id. ¶ 10.[1] To further these criminal moneymaking activities, Gambino members and associates would engage in still other crimes, some involving the use and threatened use of "physical violence, including murder." Id. The Indictment identified a number of secondary enterprise objectives for which Gambino members and associates also employed criminal means, including violence and murder, i.e., to settle personal grievances and vendettas, to prevent detection by law enforcement, and to coordinate criminal activities with other organized crime families. See id. ¶¶ 11-13.

The Indictment alleged that the Gambino family operated through various "crews," which consisted of a number of "made" family members (sometimes referred to as "soldiers") as well as associates. Id. ¶ 2. Each crew was headed by a captain. Each captain reported to the family "boss," who was himself assisted by an "underboss" and a "consigliere" in supervising and protecting the family's overall activities. Id. ¶¶ 2-5. At various times, Pizzonia served as "a captain, acting captain, soldier or associate within the Gambino family." Id. ¶ 8.

The Indictment charged that the "pattern of racketeering activity through which the defendants . . . agreed to conduct the affairs of the enterprise consisted of" seven numbered

---

[1] This enterprise, one of five organized crime families composing the New York City area Mafia, see United States v. Eppolito, 543 F.3d 25, 28 (2d Cir. 2008) (identifying Bonanno, Colombo, Gambino, Genovese and Lucchese crime families as composing New York City Mafia), has figured in other racketeering cases before this court, see, e.g., United States v. Yannotti, 541 F.3d 112, 115 (2d Cir. 2008).

5

"racketeering acts," some of which were divided into lettered subparts.  Id. ¶ 16 (emphasis

added).  These predicate acts were as follows:

- Act One, A: From 1987 through June 1988, Pizzonia, DiCongilio, and unnamed others conspired to murder Frank Boccia.

- Act One, B:  In June 1988, Pizzonia, DiCongilio, and unnamed others murdered Frank Boccia.

- Act Two, A: From September 1992 through December 24, 1992, Pizzonia and unnamed others conspired to murder Rosemary and Thomas Uva.

- Act Two, B: On December 24, 1992, Pizzonia and unnamed others murdered Rosemary Uva.

- Act Three: On December 24, 1992, Pizzonia and unnamed others murdered Thomas Uva.

- Act Four: Between 1995 and 1996, Pizzonia and unnamed others conspired to use extortionate means to collect extensions of credit from John Doe #1.

- Act Five: Between December 1999 and May 2000, Pizzonia and unnamed others conspired to use extortionate means to collect extensions of credit from John Doe #2.

- Act Six, A: Between 2001 and June 2002, Pizzonia and unnamed others made extortionate extensions of credit to John Doe #3.

- Act Six, B: Between 2001 and June 2002, Pizzonia and unnamed others used extortionate means to collect and attempt to collect an extension of credit from John Doe #3.

- Act Seven, A:  Between January 1994 and January 1996, Pizzonia, DiCongilio and unnamed others participated in an illegal gambling business.

6

- Act Seven, B: Between January 1994 and January 1996, Pizzonia, DiCongilio, and unnamed others profited from the same illegal gambling activity.

C.    Trial

At trial, the prosecution offered extensive testimonial and physical evidence that convincingly established the existence of the charged enterprise; its moneymaking purpose; and its members' use of various criminal means to achieve that purpose and to protect the enterprise from internal disloyalty, outside rivalry, and law enforcement detection. Similarly, ample evidence was adduced demonstrating Pizzonia's association with the charged enterprise, including his induction as a "made" member of the Gambino family in 1988, and his eventual promotion to the role of "captain" in 2001. Because the sufficiency of this evidence is not challenged generally, but only as it pertains to the statute of limitations, we do not review it further except as necessary to address Pizzonia's timeliness challenge on appeal.

To establish Pizzonia's participation in a conspiracy to conduct the affairs of the Gambino family through a pattern of racketeering activity, the government sought to prove the charged predicate acts. The jury found proved Pizzonia's involvement in only two of the seven acts: the 1992 conspiracy to murder Rosemary and Thomas Uva (Act Two, A) and the

1994-1996 substantive gambling offense (Act Seven, A and B).[2] While these crimes, on their face, may appear distinct and complete, the jury concluded from the totality of the evidence that, in fact, they manifested the relationship and continuity essential to form a pattern of racketeering. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Further, although the proved predicates ended well before May 26, 2000, the jury found that the charged racketeering conspiracy continued after that date and, specifically, into the limitations period. On this point, the district court instructed the jury that the government could not satisfy the statute of limitations simply by proving that the Gambino family continued to operate after May 26, 2000. The jury had to find that Pizzonia knowingly participated after that date in the charged conspiracy. Without objection, the court instructed the jury as follows:

> The statute of limitations for the racketeering conspiracy charged in Count One is five years. . . . As to defendant Pizzonia, you must determine whether the RICO conspiracy charged in Count One, and Pizzonia's participation in the charged conspiracy, continued beyond May 26, 2000. Even if you find that the Gambino family existed beyond May 26, 2000, you must be satisfied beyond a reasonable doubt that defendant Pizzonia knowingly participated in the charged RICO conspiracy, that's Count One, beyond May 26, 2000.

Tr. at 4779-80. To confirm the jury's comprehension of this instruction, the court interrupted

---

[2] The jury did not indicate whether it found that other members of the charged conspiracy committed any of the specified predicates within the limitations period. See United States v. Yannotti, 541 F.3d at 120, 122-23 (rejecting statute of limitations challenge where jury found timely predicate acts committed by other members of enterprise).

8

its delivery of the charge to ask: "Do you understand that, everybody?" Id. at 4780. It then noted on the record that "[e]verybody [on the jury] is nodding in agreement." Id.

Among the evidence offered by the government to prove Pizzonia's participation in the charged conspiracy after May 26, 2000, was testimony from former Gambino captain Michael DiLeonardo that, in late 2001 or 2002, Pizzonia, then also a captain, served on a Gambino family committee charged with the duty "to shake the trees," which DiLeonardo explained meant to increase the collection of proceeds from family members' illegal activities. Id. at 804-05, 913.

D.     Defendant's Rule 29 Motion for a Judgment of Acquittal

After the jury returned its verdict finding Pizzonia guilty of racketeering conspiracy, defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 on the ground that the government's failure to prove a charged predicate act after May 26, 2000, necessarily precluded it from carrying its burden on the statute of limitations. The district court denied the motion, observing that ample record evidence supported a jury finding that both the charged conspiracy and Pizzonia's membership in it continued into the limitations period. See Sentencing Tr. at 12 (Sept. 5, 2007) ("[Pizzonia] never abandoned the conspiracy. He never withdrew from it. And the conspiracy continued up to and through the time of the trial.").

The district court sentenced Pizzonia principally to fifteen years' incarceration. This

9

appeal followed.

## II. Discussion

### A. Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure provides that, on a defendant's motion after verdict, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Pizzonia argues that the district court erred in denying his Rule 29 motion because the evidence was insufficient as a matter of law to prove the existence of the charged conspiracy or his participation in it anytime between May 26, 2000, and May 26, 2005, the relevant limitations period. Specifically, he asserts that by pleading that the pattern of racketeering activity "consisted of" the seven alleged predicate acts, the Indictment so defined the scope of the charged conspiracy and, thus, temporally limited the conspiracy to the predicates. Because the proved predicate acts – the conspiracy to murder the Uvas, which concluded with their deaths on Christmas Eve, 1992; and the substantive gambling operation, which was alleged to have occurred between 1994 and 1996 – did not extend into the 2000-2005 limitations period, Pizzonia insists his conviction cannot stand.

We review the denial of a Rule 29 motion de novo, viewing the evidence in the light most favorable to the government. See United States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007). Applying this standard, we reject Pizzonia's construction of the Indictment because

10

it conflates the crime of conspiracy to violate RICO, see 18 U.S.C. § 1962(d), with the pattern element of the substantive RICO violation that the conspirators intended to commit, see id. § 1962(c).  Like the district court, we conclude that, in proving the existence of the charged RICO conspiracy within the statute of limitations, the government was not limited to the predicate acts that were pleaded to demonstrate the intended pattern.  We further conclude that the totality of the evidence permitted a reasonable jury to find that the charged conspiracy did continue beyond May 26, 2000, and therefore into the limitations period.  See United States v. Abdulle, 564 F.3d 119, 125 (2d Cir. 2009).[3]

B.      The Temporal Scope of the RICO Conspiracy Was Not Limited to the Charged or Proved Predicate Acts

RICO, specifically 18 U.S.C. § 1962(c), makes it a substantive crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Section 1962(d), in turn, makes it "unlawful for any person to conspire to violate" the substantive provisions of RICO.  When read in conjunction with the language of § 1962(c), RICO's conspiracy provision thus proscribes an agreement to conduct or to participate in the

_____

[3] The trial court instructed the jury that "[t]he elements of a racketeering conspiracy . . . may be inferred from the various kinds of evidence before you. . . . You must determine whether, based on the entirety of the evidence, the government has proven that the defendant entered into the required conspiratorial agreement."  Tr. at 4778-79.

11

conduct of the enterprise's affairs through a pattern of racketeering activity.[4]

Pizzonia does not challenge this articulation of the law. Rather, he contends that the prosecution narrowly defined the scope of the charged conspiracy by specifying in the Indictment that the pattern of racketeering activity "consisted of" seven enumerated predicate acts. Pizzonia submits that, on such a pleading, a conspiracy to participate in the affairs of an enterprise through a pattern of racketeering cannot, as a matter of law, temporally extend beyond the commission of the last proved predicate. We are not persuaded.

At the outset, we note that the Indictment alleges that the <u>pattern</u> of racketeering activity – not the <u>conspiracy</u> itself – consisted of the specified predicates: "The pattern of racketeering activity through which the defendants Dominick Pizzonia and Alfred DiCongilio agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below as racketeering acts one through seven of this Superseding Indictment." <u>See</u> Indictment ¶ 16. The distinction is significant. As this court emphasized in <u>United States v. Persico</u>, 832 F.2d 705 (2d Cir. 1987), "the agreement proscribed by section 1962(d) is [a] conspiracy to participate in a charged enterprise's affairs" through a pattern of racketeering,

_____

[4] <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993), adopted an "operation or management" test to identify defendants who conducted or participated in the conduct of a racketeering enterprise for purposes of substantive RICO, <u>id.</u> at 182, 184. The test, however, does not apply to RICO conspiracy. <u>See United States v. Zichettello</u>, 208 F.3d 72, 99 (2d Cir. 2000). A defendant whose role in a racketeering conspiracy does not involve operation or management may be guilty under § 1962(d) where he "'know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role.'" <u>Id.</u> (quoting <u>United States v. Rastelli</u>, 870 F.2d 822, 828 (2d Cir. 1989)).

12

"not [a] conspiracy to commit predicate acts," id. at 713. Thus, in Persico, even though "the last predicate acts ascribable to [the defendants] occurred more than five years prior to the date of the indictment," id., we concluded from the totality of the evidence that "the government amply demonstrated that the conspiracy to conduct the affairs" of the enterprise charged in that case "continued until, and well after . . . the date the superseding indictment was filed," id. at 713-14. On that basis, we upheld the defendants' convictions for RICO conspiracy.[5]

Just as the evidence used to establish the enterprise and pattern elements "may in particular cases coalesce," United States v. Turkette, 452 U.S. 576, 583 (1981); see also United States v. Eppolito, 543 F.3d 25, 50 (2d Cir. 2008), so too may the evidence used to prove those elements and a conspiratorial agreement to engage in racketeering, see United States v. Martino, 648 F.2d 367, 382-83 (5th Cir. 1981) ("Prosecution of RICO substantive and conspiracy charges expectedly involves considerable overlap in the evidence." (citing Iannelli v. United States, 420 U.S. 770 (1975))). The concepts of racketeering conspiracy, enterprise, and pattern, however, are not interchangeable. As we explained in United States

---

[5] In a recent unpublished summary order, this court relied on Persico to reject the argument that "the goals of the charged conspiracy were limited to or exclusively defined by the predicate acts alleged in the indictment." United States v. Soto, 269 F. App'x 22, 24 (2d Cir. 2008). We identified "no error in the use of uncharged acts to prove that the RICO conspiracy charge was not time-barred" and, in reaching this conclusion, distinguished a racketeering conspiracy from the pattern element of RICO, id., much as we do in this opinion.

13

v. Russotti, 717 F.2d 27 (2d Cir. 1983), "it is neither the enterprise standing alone nor the pattern of racketeering activity by itself which RICO criminalizes," but "[r]ather, the combination of these two elements," id. at 33 (emphasis omitted). It follows, then, that the pattern element of racketeering cannot by itself define a § 1962(d) conspiracy. To understand the scope of the jointly undertaken scheme, one must also consider the enterprise that the conspirators agreed to conduct through a pattern of racketeering. In short, a RICO conspiracy is never simply an agreement to commit specified predicate acts that allegedly form a pattern of racketeering. Nor is it merely an agreement to join in a particular enterprise. Rather, it is an agreement to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering. See United States v. Persico, 832 F.2d at 713. For that reason, while a RICO conspiracy's existence within the statute of limitations may well be proved by evidence of predicate acts occurring within the limitations period, see United States v. Yannotti, 541 F.3d at 122-23 (observing that proof of predicate acts by co-conspirators established continuation of charged conspiracy into limitations period), that is not the only means by which the law's temporal requirement can be satisfied, see United States v. Persico, 832 F.2d at 713.

Pizzonia nevertheless insists that by specifying in the Indictment that the pattern of racketeering "consists of" the seven enumerated predicate acts, the government necessarily limited the scope of the charged racketeering conspiracy. We recognize that the pleading

14

represents no casual choice of language by the prosecution. A Department of Justice manual specifically instructs prosecutors that "[t]he pattern of racketeering should be drafted to allege that it 'consists of' rather than 'includes' the acts of racketeering to avoid double jeopardy problems in the event a RICO defendant is charged with a subsequent RICO violation." U.S. Dep't of Justice, Racketeer Influenced & Corrupt Organizations, A Manual for Federal Prosecutors 222 (4th rev. ed. 2000) (footnotes omitted).

We express no opinion as to whether this pleading practice will, in fact, avoid the identified double jeopardy concerns. We note simply that the question may not admit a ready answer. Although our court has indicated that if either the enterprise or the pattern at issue in successive RICO prosecutions is different, "there is no infirmity under the double jeopardy clause," United States v. Russotti, 717 F.2d at 33, we have not relied on predicates alone to distinguish patterns of racketeering. Rather, we have identified a five-factor test – essentially looking to the totality of the circumstances – to determine whether two RICO counts charge distinct patterns of racketeering activity:

> (1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

Id. Our sister circuits have adopted similar holistic approaches. See United States v. Wheeler, 535 F.3d 446, 449-50 (6th Cir. 2008) (concluding from application of Russotti

15

factors that successive prosecutions involved same pattern of racketeering despite some differences in predicate acts); United States v. DeCologero, 530 F.3d 36, 71 (1st Cir. 2008) ("In comparing the charged patterns of racketeering, we consider the totality of the circumstances, including the similarities of the time, the place, the people, and the nature and scope of the activities involved in each indictment." (internal quotation marks deleted)); United States v. Calabrese, 490 F.3d 575, 581 (7th Cir. 2007); United States v. Cole, 293 F.3d 153, 158 (4th Cir. 2002); United States v. Smith, 82 F.3d 1261, 1267 (3d Cir. 1996); United States v. Petty, 62 F.3d 265, 267 (8th Cir. 1995); United States v. Beszborn, 21 F.3d 62, 69 (5th Cir. 1994) (observing that double jeopardy challenge to RICO prosecutions required court to "review the entire record" in view of same five factors outlined in Russotti); United States v. Ruggiero, 754 F.2d 927, 932-33 (11th Cir. 1985).

This totality-of-the-circumstances approach to identifying a pattern of racketeering is in accord with the rationale underlying RICO's pattern requirement. "Congress was concerned in RICO with long-term criminal conduct." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 242. RICO's pattern element thus serves to ensure that a defendant's criminal participation in an enterprise is not merely isolated or sporadic, but indicative of the sort of continuity of criminal activity – or the threat of continuity – that is the hallmark of racketeering. See id. at 239, 242; Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985) (discussing continuity aspect of pattern element); United States v. Eppolito, 543 F.3d

16

at 50-51 (noting that pattern element signals Congress's intent to exclude "isolated" or "sporadic" criminal activity from the definition of racketeering). Although no less than two predicate acts must be committed – or, in the case of RICO conspiracy, agreed to, see United States v. Persico, 832 F.2d at 713 – to demonstrate a pattern of racketeering, in the end, it is not the number of predicates proved but, rather, "the relationship that they bear to each other or to some external organizing principle" that indicates whether they manifest the continuity required to prove a pattern, H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 238.

Indeed, the continuity aspect of RICO's pattern element explains why we reject Pizzonia's argument that the charged conspiracy necessarily achieved its objective with the completion of the two proved predicates, i.e., the Uva murders and the gambling operation. To explain, we begin by reviewing some basic principles relevant to the concept of RICO "continuity." The law recognizes RICO "continuity" to be "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. Continuity over a closed period – which is not present in this case – may be proved by "a series of related predicates extending over a substantial period of time." Id. at 242. Over an open period, however, continuity may be proved even by a small number of predicates, or by ones occurring close together in time, if "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." Id. (noting that implicit in extortionate

17

demands for monthly payments from storeowners in return for "insurance" against broken windows was the threat of continued demands). Alternatively, the threat of continued criminal activity over an open period can be established where discrete predicates "can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." Id. at 243. This is such a case. Long-term criminal associations plainly include "those traditionally grouped under the phrase 'organized crime,'" id., of which the Gambino crime family is an example, see United States v. Yannotti, 541 F.3d at 115-16. As the Indictment asserts, the Gambino family exists for the purpose of making money from a wide variety of criminal activities. Further, the family uses crime, notably violent crime, to protect its money-making operations. Thus, an agreement to participate in the affairs of such an enterprise through a pattern of racketeering activity, even one manifested by only two predicate acts, poses an open-ended risk of continuing criminal conduct that does not necessarily conclude with the last pleaded predicate. This is not to foreclose the possibility of racketeering conspiracies with limited objectives even within organized crime enterprises. We hold only that where, as here, the affairs of the enterprise in which a defendant agreed to participate through a pattern of racketeering are broadly defined to encompass all its criminal money-making objectives and all means used to protect those objectives, the conspiracy does not end, as a matter of law, with the last proved predicate.

This conclusion comports with the law's general recognition of conspiracy as a

"continuing crime," that is "not complete until the purposes of the conspiracy have been accomplished or abandoned." See United States v. Eppolito, 543 F.3d at 47 (internal quotation marks omitted). As we have already noted, the purpose of a RICO conspiracy is to conduct or to participate in the conduct of a charged enterprise's affairs, "not . . . to commit predicate acts." United States v. Persico, 832 F.2d at 713. Thus, whether a pattern is pleaded to have "consisted of" or "included" specified predicate acts, the completion of those predicates does not, as a matter of law, dictate the end of the pattern, much less the attainment or abandonment of the conspiracy's overall objective. To the contrary, once the government presents sufficient evidence to show the existence of a conspiracy having a continuing purpose – in this case, earning money for the Gambino family through various criminal activities – the law presumes the continued existence of the conspiracy and places "the burden . . . on the defendant to prove that the conspiracy was terminated or that he took affirmative steps to withdraw." United States v. Eppolito, 543 F.3d at 49; see United States v. Yannotti, 541 F.3d at 123; United States v. Spero, 331 F.3d 57, 60 (2d Cir. 2003).

This presumption was not, however, employed in this case. Judge Weinstein instructed the jury that the government had to adduce further evidence that the charged conspiracy and Pizzonia's participation in it continued into the limitations period. While this participation did not have to be a specified predicate act, it had to be attributable to Pizzonia himself and not simply to other members of the charged conspiracy, a narrower view of

19

§ 1962(d) than we recently endorsed in United States v. Yannotti, 541 F.3d at 122. For reasons discussed in the next section, we conclude that the evidence was sufficient to support a jury finding that the government carried this burden of proving Pizzonia's continued participation in the conspiracy. We here hold simply that the Indictment's pleading that a pattern "consisted of" specified predicate acts (1) did not preclude a jury from considering those predicates in light of the totality of the evidence to determine whether they manifested a pattern of continuing criminal activity through which the conspirators agreed to conduct the enterprise's affairs and, accordingly, (2) did not limit the temporal scope of the charged racketeering conspiracy to the time-frame of those predicates.[6]

C.    Evidence of Conspiracy Within the Limitations Period

At oral argument, Pizzonia's counsel indicated that his sufficiency challenge was limited to the government's inability to prove a predicate act within the limitations period. While this concession waives any broader sufficiency challenge, see United States v. Polouizzi, 564 F.3d 142, 153 (2d Cir. 2009), we note that such an argument would, in any event, fail on its merits.

Pizzonia effectively concedes that the evidence was sufficient to permit a reasonable

---

[6] In light of this ruling, no further discussion is necessary for us to reject as meritless Pizzonia's argument that Judge Weinstein constructively amended the charged conspiracy by allowing the jury to consider its continuance beyond the last proved predicate. Because no objection to the charge was raised in the district court, our review on this point would, in any event, be limited to plain error. See United States v. Weintraub, 273 F.3d 139, 145 (2d Cir. 2001).

20

jury to find proved the charged conspiracy and his participation in it before May 26, 2000. Against that background, even when we set aside evidence pertaining to acquitted counts or predicates found not proved, our independent review of the totality of the remainder of the record, viewed in the light most favorable to the government, see United States v. Amico, 486 F.3d at 780, leads us to reach the same conclusion as the district court: ample evidence demonstrated Pizzonia's continued participation in that conspiracy after May 26, 2000. Most obviously, evidence was adduced that, in 2001, Pizzonia held the rank of captain in the Gambino crime family. In that capacity, he sat on a special committee that sought to increase family revenues from the Gambinos' assorted criminal activities. It is difficult to imagine evidence that could more convincingly demonstrate a defendant's agreement to participate in the affairs of the charged enterprise through a pattern of continuing criminal activity.

Accordingly, we conclude that the district court correctly denied Pizzonia's Rule 29 motion for a judgment of acquittal.

### III.    Conclusion

To summarize, we conclude

1.    Even though the pattern of racketeering was alleged to have "consisted of" specified predicate acts, neither that pattern nor those predicates defined the scope of the charged RICO conspiracy so as to require proof of a predicate within the statute of limitations to support conviction.

21

2.      Although the last proved predicate concluded before the limitations period, a reasonable jury could have concluded from the totality of the evidence that the charged racketeering conspiracy and Pizzonia's participation in that conspiracy continued into the limitations period.

Accordingly, we AFFIRM the judgment of conviction.