22-2991-cr
*United States v. Fertides (Pabon)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of July, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                                  22-2991-cr

YASMIL FERTIDES, a/k/a LITTLE HALF;
MILTON CHARDON, a/k/a BLANQUITO;
BRYAN CASTILLO, a/k/a TRUE; GEORGE
CITRONELLE; JEREMY ESTEVEZ, a/k/a
JERM RACKS, a/k/a JEREMY ESTEVES;
NOEL MARTINEZ, a/k/a CRAZY;
DOMINGO TOLENTINO, a/k/a JUVI; JUAN
CALDERON, a/k/a PRIVA; SAMANTHA
BATISTA,

> *Defendants,*

CHRISTIAN PABON, a/k/a BANGA,

> *Defendant-Appellant.*

1

FOR APPELLEE:                          ELIZABETH A. ESPINOSA, Assistant United
                                       States Attorney (Rushmi Bhaskaran and
                                       Hagan Scotten, Assistant United States
                                       Attorneys, *on the brief*), *for* Damian
                                       Williams, United States Attorney for the
                                       Southern District of New York, New York,
                                       New York.

FOR DEFENDANT-APPELLANT:               RANDALL D. UNGER, Kew Gardens, New
                                       York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on November 14, 2022, is **AFFIRMED**.

Defendant-Appellant Christian Pabon appeals from the district court's judgment of conviction entered after a trial at which he was found guilty of conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d), and murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), in connection with "the 200" gang ("the 200"), an alleged racketeering enterprise that operated in Upper Manhattan. Pabon was sentenced principally to 360 months' imprisonment on the racketeering conspiracy conviction and life imprisonment on the murder conviction, to run concurrently. On appeal, Pabon challenges: (1) the sufficiency of the evidence adduced at trial; and (2) the admission of a prior state-court conviction. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.    Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence "*de novo*, considering the evidence in its totality." *United States v. Arrington*, 941 F.3d 24, 36 (2d Cir. 2019). A defendant who makes

2

such a challenge "bears a heavy burden." *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022). In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014) (internal quotation marks and citation omitted).

The conspiracy provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), "proscribes an agreement to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009). The term "enterprise" includes any "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Proof of a formal organization, while supportive, is not required to establish the existence of an enterprise because "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). "Though the substantive RICO offenses require proof of an enterprise and a pattern of racketeering activity, 'the establishment of an enterprise is not an element of the RICO conspiracy offense.'" *United States v. White*, 7 F.4th 90, 98–99 (2d Cir. 2021) (quoting *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011)). However, a conviction for murder in aid of racketeering "requires the government to prove that the organization was a RICO enterprise," among other things. *United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010).

Pabon challenges the sufficiency of the trial evidence supporting both of his convictions, arguing that the government failed to prove the existence of a RICO enterprise and his involvement

3

in the enterprise during the charged timeframe. In particular, Pabon asserts that "the evidence demonstrated that a number of young men who grew up together and resided in the vicinity of Dyckman Street in Manhattan, and considered themselves members of various gangs, individually and collectively committed crimes of convenience on an ad hoc basis." Appellant's Br. at 19. After reviewing the trial record, we find Pabon's challenge to the sufficiency of the evidence unpersuasive as to both charges.

The government presented extensive evidence at trial, including the testimony of three cooperating witnesses who were members or associates of the 200, establishing that the 200 was an association-in-fact enterprise with the common purpose of taking over and controlling an area in Upper Manhattan near Dyckman Street—also known as 200th Street—to engage in racketeering activity. For example, the government offered evidence demonstrating, *inter alia*, that the 200, through its members: (1) maintained two headquarters in Upper Manhattan where members socialized and sold drugs; (2) had a defined leadership structure and rules for membership, including a specific hand sign used by its members to signify their membership in the gang; (3) had access to guns that members would store in houses on blocks controlled by the 200, as well as in cars and other areas accessible to its members; and (4) committed various crimes on behalf of the gang including shootings, drug dealing, and robberies.

Notwithstanding this substantive evidence of the existence of a street gang with a common purpose of engaging in various racketeering activities, Pabon suggests that no rational jury could find beyond a reasonable doubt that the 200 was an association-in-fact enterprise because the government did not prove that it is an enterprise based on profit-sharing. We disagree. Although evidence of profit-sharing among members can certainly *support* a finding that an enterprise exists, we have never held that profit-sharing is *necessary* to establish the existence of a racketeering

4

enterprise. To the contrary, we have emphasized that evidence that the gang members' "activities were coordinated to serve common goals . . . is all that is required." *Applins*, 637 F.3d at 78; *see also Boyle*, 556 U.S. at 948 (emphasizing that "decisions [by a group] may be made on an ad hoc basis and by any number of methods" and still constitute a RICO enterprise if it is "a continuing unit that functions with a common purpose"); *United States v. Pierce*, 785 F.3d 832, 838–39 (2d Cir. 2015) (rejecting sufficiency challenge to proof regarding racketeering enterprise where "the government's evidence established that [the gang] was a continuing unit that functioned with a common purpose: the illicit sale of narcotics in and around the Melrose-Jackson Houses").

Here, there was sufficient evidence of a coordinated common purpose shared by members of the 200, even if they did not share profits from their criminal activities or provide financial support to one another. In any event, a cooperating witness and founding member of the 200, Raymond Castillo, testified that members of the 200 supported each other by providing funds for bail and attorney fees. This further supports the existence of an enterprise. *See United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010) (rejecting contention "that the evidence at trial merely showed a group of 'neighborhood friends'" and finding evidence sufficient to establish a RICO enterprise involving "more than a dozen individuals distributing narcotics in the East New York section of Brooklyn" based upon, *inter alia*, testimony that members provided funds for other "members who were 'broke' or in jail").

We are similarly unpersuaded by Pabon's contention that, although "there was certainly evidence that he was a gang member and that he was acquainted with individuals who committed varied and serious offenses," the evidence did not establish that the 200 was a RICO enterprise because many of its members, including Pabon, also belonged to other gangs. Appellant's Br. at 24. Castillo testified that, although members of the 200 often were affiliated with other distinct,

5

national gangs, they were expected to have primary loyalty to the 200 before any other gang.  In any event, undivided loyalty of its members is not a prerequisite to the existence of a RICO enterprise and there was sufficient evidence for a reasonable jury to conclude that the 200 was an association-in-fact enterprise that functioned separately as a unit despite some of its members having other gang affiliations. *See White*, 7 F.4th at 100 (finding sufficient evidence that the MBG gang was a RICO enterprise where, "though many MBG members were members also of the YGz, MBG members functioned separately as a unit for the purpose of engaging in violence against Killbrook and selling drugs").

Pabon also asserts in a conclusory fashion that there was insufficient evidence establishing his knowledge of, or agreement with, the criminal objectives of the 200.  We disagree.  "To be convicted as a conspirator under RICO, one must be shown to have possessed knowledge of only the general contours of the conspiracy." *Id.* at 99 (alteration adopted; citation omitted); *see also Arrington*, 941 F.3d at 36–37 (explaining that, to prove a defendant's participation in a RICO conspiracy, the government "need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme").  In other words, "[i]f the government proves the existence of a RICO enterprise, we need inquire only whether an alleged conspirator knew what the other conspirators 'were up to' or whether the situation would logically lead an alleged conspirator 'to suspect he was part of the larger enterprise." *White*, 7 F.4th at 99 (internal quotation marks and citation omitted).

Here, there was sufficient evidence at trial that Pabon knew of, and agreed to, the general criminal objectives of the 200 and understood he was participating in the activities of that particular gang.  For example, cooperating witnesses testified that he publicly identified as a member of the 200 and demonstrated his membership with the gang's hand sign, and such testimony was

6

corroborated by Pabon's social media posts. Cooperator testimony also established that Pabon committed robberies, sold drugs, and carried out acts of violence on behalf of the 200. Furthermore, all three cooperating witnesses testified that Pabon was the gang's main "shooter" and had access to guns that could be used to commit acts of violence. Although Pabon suggests that "the record did not even clearly establish to which gang [he] allegedly owed his allegiance," Appellant's Br. at 24, Castillo testified that the 200 had disputes with other gangs and, on one occasion, Pabon refused to shoot Castillo at the order of another gang because he considered himself "200 before anything." Tr. at 219. More importantly, as noted above, evidence of Pabon's involvement in more than one gang, including any conflicting allegiances resulting therefrom, did not preclude a rational finding by a jury that he "knew of, and agreed to, the general criminal objective of a jointly undertaken scheme" by the 200. *Arrington*, 941 F.3d at 36–37; *see also White*, 7 F.4th at 100.

Finally, to the extent that Pabon raises the same arguments to challenge the RICO enterprise element in connection with his conviction on the murder-in-aid-of-racketeering count, involving the 2014 murder of Orlando Rivera, that challenge fails for the same reasons. Moreover, in connection with that charge, there was also sufficient evidence that Pabon committed the Rivera murder "for the purpose of . . . maintaining or increasing [his] position" as the gang's shooter. 18 U.S.C. § 1959(a).

In sum, viewing the trial evidence in the light most favorable to the government, we conclude that the evidence was sufficient for a rational jury to convict Pabon on both counts.

## II. Evidentiary Ruling

Pabon also argues that the district court erred in admitting evidence of his 2015 arrest and subsequent 2016 state-court firearm conviction. Specifically, Pabon was convicted in 2016 on his

7

plea of guilty to a charge of attempted criminal possession of a weapon in the second degree, in connection with his possession on September 11, 2015, of a loaded nine-millimeter firearm in the vicinity of Sherman Avenue and Academy Street in Manhattan.

Before trial in this matter, Pabon moved *in limine* to exclude the evidence of the firearm conviction, claiming that it was "unrelated to the charged crimes" and "not at all similar to any of the charged offenses" for the purposes of Federal Rule of Evidence 404(b). App'x at 57, 60. The government sought to introduce the conviction as direct proof of Pabon's involvement in the charged racketeering conspiracy, or in the alternative under Rule 404(b) to show Pabon's access and opportunity to possess guns and ammunition. The district court determined that the evidence was admissible as direct evidence of the charged racketeering conspiracy, finding that a "[l]oaded 9-millimeter in territory of the 200, during the time of the conspiracy, [is] inextricably intertwined with the evidence regarding the charged offense" because the 2016 conviction "deals with his role and membership in the 200." App'x at 103–04. The district court also concluded that the evidence should not be precluded as unfairly prejudicial under Federal Rule of Evidence 403.

We review a district court's decision to admit evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021). Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "other-crimes evidence *is* admissible if offered for any purpose *other than* to show a defendant's criminal propensity," including motive, opportunity, knowledge, and intent. *United States v. Williams*, 930 F.3d 44, 63 (2d Cir. 2019) (internal quotation marks and citation omitted). Moreover, evidence of uncharged criminal acts "is not considered other crimes evidence under" Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense,

8

if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.").

Any evidence admitted for these additional purposes must likewise survive the Rule 403 weighing of its probative value against the danger of unfair prejudice. *See United States v. Robinson*, 702 F.3d 22, 37 & n.15 (2d Cir. 2012). Rule 403 allows a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence generally is not unfairly prejudicial when it "d[oes] not involve conduct more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). "In reviewing Rule 403 challenges, we accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (internal quotation marks and citation omitted). Thus, where a "district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

The district court properly held that evidence of Pabon's 2016 firearm conviction was admissible as direct evidence because it was inextricably intertwined with his alleged participation in the charged racketeering conspiracy. Count One of the Superseding Indictment charged Pabon with conspiring to participate in the 200 from in or around 2014 through in or around September

2018. There was evidence at trial that the location where Pabon possessed the gun in connection with his 2016 conviction—namely, Sherman Avenue and Academy Street—was within the 200's territory. Moreover, three cooperating witnesses testified that he was the gang's main shooter, who regularly possessed and provided guns to members and associates who needed them. Those witnesses also established that Pabon was involved in shootings before and after the 2015 arrest, as part of his participation in the 200's violent activity. In fact, Castillo testified to having observed Pabon on "numerous" occasions in possession of a nine-millimeter handgun, the same type of handgun he was convicted of possessing in 2015. Thus, the district court did not abuse its discretion in admitting evidence of Pabon's arrest and conviction for possession in 2015 of the nine-millimeter handgun, in 200 territory and during the timeframe of the 200 conspiracy, because that evidence corroborated the trial testimony that Pabon was the shooter for the 200 and was "inextricably intertwined" with the charged racketeering conspiracy. *Carboni*, 204 F.3d at 44; *see also United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (finding no error in admission of evidence regarding the defendant's possession of a firearm on days other than the single date charged in the indictment because it constituted direct evidence of the charged crime); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."); *United States v. Biaggi*, 853 F.2d 89, 106 (2d Cir. 1988) ("Defendants' contention that the [evidence] had nothing to do with the alleged conspiracy . . . was an argument to be made to the jury rather than a ground for exclusion of the evidence by the court.").[1]

---

[1] Having concluded that the state firearm charge was properly admitted as direct evidence, we need not reach the issue of whether it is was alternatively admissible under Rule 404(b).

Additionally, the district court conducted the requisite balancing under Rule 403 and properly concluded that any unfair prejudice from this evidence did not substantially outweigh its probative value. The prior state conviction for gun possession "did not involve conduct any more sensational or disturbing than the crimes with which" the defendant was charged, which involved his alleged participation in the activities of a violent street gang, including murder. *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019) (citation omitted). Pabon suggests that he was unfairly prejudiced because there was ballistics evidence at trial that a nine-millimeter gun was used in the charged 2014 murder, and the jury might have concluded that the nine-millimeter gun recovered during Pabon's arrest in September 2015 was the same weapon used in the charged 2014 murder even though there was no evidence establishing such a link. However, Pabon acknowledges that "the government did not argue that the nine millimeter pistol which [he] possessed on September 11, 2015[,] was one of the firearms used in the murder of Orlando Rivera in 2014." Reply Br. at 7–8. Instead, the government properly argued in summation that Pabon's possession of a firearm in 2015 confirmed the testimony of the cooperating witnesses that Pabon was the 200's shooter. *See* Tr. at 975–76 ("Part of why you know that [Pabon] carried guns for the 200, just like the cooperat[ing witnesses] said he did, was that in 2015, he was arrested with this loaded gun in 200 territory."). Thus, we discern no error in the district court's balancing under Rule 403.

In sum, the district court did not abuse its discretion in admitting the 2016 conviction as direct evidence of the charged racketeering conspiracy.

*        *        *

We have considered Pabon's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court