*Moss v. First Premier Bank*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of June, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

DEBORAH MOSS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

> *Plaintiff-Appellant*,

v.                                                                              24-2449

FIRST PREMIER BANK, A SOUTH DAKOTA STATE-CHARTERED BANK,

> *Defendant-Appellee.*[*]

_____

For Plaintiff-Appellant:          DARREN T. KAPLAN, Kaplan Gore LLP, Carle Place, NY.

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

Jonathan M. Streisfeld, Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Fort Lauderdale, FL.

For Defendant-Appellee: BRYAN R. FREEMAN & Judah A. Druck, Maslon LLP, Minneapolis, MN.

Appeal from an order of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant Deborah Moss appeals from an order of the United States District Court for the Eastern District of New York (Cogan, *J.*), entered on August 2, 2024, granting Defendant-Appellee First Premier Bank's ("First Premier") motion for summary judgment as well as the court's September 8, 2024 order denying Moss's motion for reconsideration. Moss brought a single claim against First Premier for conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). On appeal, Moss argues that the district court erred in determining that no reasonable jury could conclude that First Premier (1) had knowledge of the alleged RICO conspiracy; and (2) agreed to join it. We agree that Moss failed to adduce sufficient evidence at the summary judgment stage to support a jury determination that First Premier agreed to join the alleged RICO conspiracy. Based on this conclusion, we need not address the conclusion that Moss also failed to raise a material issue as to First Premier's knowledge of the conspiracy. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss here only as necessary to explain our decision to **AFFIRM**.

\* \* \*

We review the district court's rulings on summary judgment *de novo*, resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party. *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, we will affirm a grant of summary judgment "only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law," *id.* (internal quotation marks omitted), or in other words, where no reasonable jury could return a verdict for the nonmoving party, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).

Moss's RICO claim arises from a payday-lending scheme (the "Tucker Scheme") perpetuated by non-party Scott Tucker. As the district court aptly summarized:

> Scott Tucker, in collusion with several of his corporate entities ("Tucker Lenders"), perpetrated a years-long lending scheme in which he extended payday loans at usurious rates. He was able to evade detection by hiding behind fraudulent relationships with Native American tribes and claiming tribal immunity from state laws that would otherwise prohibit his usurious loans. Tucker cultivated relationships with these tribes, leading them to issue certificates indicating that the businesses were tribally owned. . . . The full scope of his scheme came to light in 2016, when the Department of Justice indicted him and five Tucker Lenders for RICO violations. He has since been convicted of violating RICO and sentenced to 200 months in prison. Tucker's scheme pertains to the instant case because [One Click Cash], the originator of the subject loan [that Moss took out], was one of the Tucker Lenders.

*Moss v. First Premier Bank*, No. 13-CV-5438 (BMC), 2024 WL 4274780, at *1 (E.D.N.Y. Aug. 2, 2024), *recons. denied*, 2024 WL 4274764 (E.D.N.Y. Sept. 9, 2024).

First Premier is a bank that operates as an Originating Depository Financial Institution ("ODFI") in the Automated Clearing House ("ACH") System. It had a contract with non-party Intercept, a Third-Party Sender ("TPS") that processed data instructions to debit bank accounts held by the Tucker Lenders' customers. Once Intercept received these instructions from the Tucker Lenders, it would send them to First Premier, which would then package the instructions with data files from other loans and send them to the ACH operator for transmittal to the relevant

3

customer's bank, i.e., the Receiving Depository Financial Institution ("RDFI"). Moss alleges that, "by granting the Tucker [] Lenders' requests to 'initiate' ACH entries representing payday loan debits from consumer deposit accounts," First Premier engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). J. App'x 141–42. We disagree.

"Section 1962(d) . . . makes it 'unlawful for any person to conspire to violate' the substantive provisions of RICO." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009). The crux of Moss's argument is that First Premier and the Tucker Lenders conspired together to collect usurious debt and that they did so by communicating through an innocent intermediary, Intercept.[1] *See* Appellant's Reply Br. 25 n.12 ("Intercept is nowhere alleged to be a member of the conspiracy. However, regardless of nomenclature, Intercept inarguably was the conduit for both information and money between First Premier and the Tucker Lenders."). But an agreement requires "proof that the conspirators reached a meeting of the minds as to the operation of the affairs of the enterprise through a pattern of racketeering conduct." *United States v. Cain*, 671 F.3d 271, 285 (2d Cir. 2012) (internal quotations and emphasis omitted). And Moss failed to adduce sufficient evidence to support the existence of such an agreement.

There is no evidence that First Premier ever directed Intercept to communicate with the Tucker Lenders on its behalf, or vice versa. Moss argues that even if First Premier and the Tucker Lenders never communicated directly, we can infer an agreement based on (1) the express contractual agreement between First Premier and Intercept, Appellant's Br. at 50–51; and (2) First Premier's approval of New Client Request Forms ("NCRFs") for the Tucker Lenders, Appellant's Reply Br. at 3. Yet, the existence of a contract between First Premier and Intercept does not

---

[1] It is undisputed that First Premier never had a direct contract with any of the Tucker Lenders and that there is no record of any of First Premier's employees ever speaking to anybody associated with the Tucker Lenders. J. App'x 410–11.

4

establish a conspiratorial agreement between First Premier and the Tucker Lenders. And while First Premier did approve the NCRFs for the Tucker Lenders, Moss has "admit[ted]" that "First Premier's employees were not informed and did not have any knowledge" of, much less agree to participate in, the Tucker Lenders' scheme to "deceive . . . customers into paying more money . . . than was legally owed" by relying on "sham relationships with [Native] [t]ribes." J. App'x 419. Thus, the mere fact of these NCRF approvals does not show that First Premier agreed to further the Tucker Scheme. And given the complete absence of evidence of a meeting of the minds between First Premier and the Tucker Lenders, the district court did not err in concluding that Moss failed to raise a material issue of fact as to whether First Premier agreed to join the Tucker conspiracy. *See United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (holding that the relevant question is "whether an alleged conspirator knew what the other conspirators were up to or whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise") (internal quotation marks omitted).

\*     \*     \*

We have considered appellant's remaining arguments and find them to be without merit. Accordingly, the order of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5